PACKET CO. *v.* HOBBS.

(*Jackson.*    June 6, 1900.)

1. EVIDENCE.  *By exhibition and exercise of injured limb.*

In an action for personal injury it is competent for the plaintiff, upon his own motion and in his own behalf, to exhibit and exercise the injured part or limb in the presence of the jury, although two years had elapsed since the infliction of the injury, for the purpose of showing the nature and extent of the injury.  (*Post, pp. 30–40.*) .

Case cited: Bruce *v.* Beall, 99 Tenn., 303.

2. SAME.  *Meaning of oral statements determined by jury.*

It is the province of the jury, not of the Court, to construe and determine the meaning of oral statements given in evidence, and, likewise, when that is material, to determine how such statements were or should have been understood by others.  (*Post, pp. 40, 41.*)

Case cited: McGavock *v.* Wood, 1 Sneed, 181.

3. CHARGE OF COURT.  *Special requests properly refused, when.*

It is not error for the Court to refuse to give a special instruction, though entirely accurate, when the general charge embraces substantially the same proposition.  (*Post, p. 42.*)

Cases cited: Railroad *v.* Pugh, 97 Tenn., 624; Kaufman *v.* Fye, 99 Tenn.. 146; Poole *v.* Jackson, 93 Tenn , 63; Railroad *v.* Reagan, 96 Tenn., 129.

4 SAME  *Sufficient as to defendant's negligence and plaintiff's cautiousness.*

It is sufficient in a personal injury case for the Court to instruct the jury that there can be no recovery unless the plaintiff acted cautiously and the defendant negligently, without, in terms, saying that defendant would not be liable for the consequences of a pure accident.  (*Post, pp. 42, 43.*)

---

Packet Co. *v.* Hobbs.

---

5. DAMAGES. *Duty of injured party to lessen.*

It is the legal duty of a person injured by the wrongful act of another to exercise what, under all the circumstances, is reasonable and ordinary care to prevent and diminish his damages. He is not bound to make extraordinary efforts. (*Post, pp. 43, 44.*)

6. SAME. *Same.*

An injured person has discharged his full duty to the wrong-doer, who, to prevent and lessen damages, has selected and used all reasonably accessible means, and has pursued, without medical advice, the course of treatment that would have been prescribed by a physician of ordinary care, prudence, and skill. (*Post, pp. 44, 45.*)

7. VERDICT. *Not excessive.*

The Court would not feel constrained to reverse, as excessive, a verdict of $4,000, or even of $6,200, upon the facts stated in the opinion. (*Post, pp. 46, 47.*)

Cases cited: Boyers *v.* Pratt, 1 Hum., 93; Goodall *v.* Thurman, 1 Head, 217; Railroad *v.* Roddy, 85 Tenn., 400; Cherokee Packet Co. *v.* Hilson, 95 Tenn., 7; Jenkins *v.* Hankins, 98 Tenn., 545; Bank *v.* Bowdre Bros., 92 Tenn., 724; Brown *v.* Odill, 104 Tenn., 250.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County. L. H. ESTES, J.

WARINNER & WARINNER for Packet Co.

McCULLOCH & McCULLOCH, MALONE & MALONE and JAMES P. BROWN for Hobbs.

CALDWELL, J. The Arkansas River Packet Co. prosecutes this appeal in error from a judgment

for $4,000 obtained against it by B. A. Hobbs, in the Circuit Court of Shelby County, for personal injuries, which it is alleged to have wrongfully and negligently inflicted upon him while disembarking from one of its passenger steamers, at his logging camp on the Mississippi River, about seventy-five miles below Helena, Arkansas.

The first assignment of error complains of the action of the Court in permitting the plaintiff to display and exercise his injured leg before the jury. A stenographic report of what was done and said at this point in the trial is found in the record as a part of the bill of exceptions.

It is in this language: "Mr. McCulloch, plaintiff's attorney: 'If your Honor please, we wish to introduce Mr. Hobbs again, for the purpose of showing the jury his injured limb.'

"Court: 'All right.'

"Mr. McCulloch, question: 'Show your injured knee to the jury. Stand down here on the floor. Can you pull up the leg of your pants?'

"Witness, answer: 'Yes, sir.' (Here the witness rolled up his pants above his right knee, the one alleged to have been injured, showing the naked flesh.)

"Mr. McCulloch, question: 'Is it the same size as the other knee?'

"Witness, answer: 'No, it is longer and it bends in toward the other leg.'

"Mr. McCulloch, question: 'Show how that is,

Mr. Hobbs. Let the jury see how it affects your movements.' (Witness here moved his leg to and fro.)

"Mr. McCulloch, question: 'Stand up, Mr. Hobbs.' (The witness did so.)

"Mr. McCulloch, question: 'Can't you stand any straighter on your injured leg?'

"Witness, answer: 'No, sir; it is crooked or bent, as you see.'

"Mr. McCulloch, question: 'Now stand on your left leg.' (Witness did so.)

"Mr. McCulloch, question: 'Can't you stand straight on your injured leg?'

"Witness, answer: 'No, sir. I can't bear much weight on it.'

"The defendant's attorney declined to cross-examine on the matters mentioned by the witness, and objected to the whole examination, and each and every question thereof, as incompetent; but the Court overruled the objection, and the defendant then and there excepted and reserved the benefit thereof."

The assignment made in this Court is, that "the trial Court erred in permitting Hobbs, the defendant in error, to strip his right limb naked and exhibit same to the jury during the trial, and manipulate and use the injured knee in their presence for the apparent purpose of showing to them how and to what extent he was affected by the injury, because this was an ex-

hibit or practical photograph two years after the alleged injury, and because the manipulation thereof could be used to a greater or less extent to exaggerate the hurt and mislead the jury as to its real and practical extent."

It is worthy of remark at this point that, although the objection made below embraces all that the plaintiff said and did upon being recalled to the stand, and the assignment presented here challenges all of his physical acts, the defendant's learned counsel at this bar candidly concedes that it was permissible for the plaintiff to exhibit his injured member and make oral statements about it, and criticizes only that part of the ruling which allowed what he denominates the manipulation and use of the leg in the presence of the jury; the reason for the criticism, as stated, being that the plaintiff was thereby, at the discretion of his counsel and without the requirement of the Court, afforded a practical opportunity to make a misleading exaggeration of the real extent of his injuries.

The ascertainment of truth is the true and ultimate object of every judicial inquiry; and, as a general rule, all evidence is competent which, according to the nature of the fact whose truth is submitted to investigation, may fairly and reasonably facilitate that object.

The particular matter for whose elucidation the

21 P—3

testimony now in question was introduced was the extent of the plaintiff's injuries. That was the matter under investigation at that stage of the trial, and the jury, whose peculiar province and duty it was to ascertain the same, was, therefore, entitled to the advantage of all available information calculated in its nature to facilitate the ascertainment of the real truth.

How could that investigation have been better promoted, and the attainment of that end better secured than by the course adopted in this instance, with the privilege of all legitimate cross-examination of the adverse party?

In reality the method was a superior one; and, as a result, it produced a higher order of evidence than is usually attainable, in that it added physical illustration and demonstration to oral statement, and impressed the Court and jury through the sense of sight as well as through that of hearing.

It may be true that a designing witness can exaggerate the true condition of an injured limb by false and constrained movements, and yet that cannot render the performance of physical acts inadmissible as evidence any more than the equally obvious fact that he may give undue and false coloring to his oral statements, renders him incompetent to testify by word of mouth. That objection might be urged against all human testimony, but it goes only to the question of weight or

credibility, and does not reach that of competency or admissibility.

Nor does the fact that the plaintiff exhibited his naked limb, and by its movement further illustrated its defects, of his own volition, upon the request of his counsel and without the requirement of the Court, affect the legal aspect of the evidence. What he did was done in the presence of the Court and by its express permission first obtained; and, besides, if there is any difference in point of admissibility between such acts when voluntarily performed and when unwillingly done by order of Court, the advantage is with the former.

There is great contrariety of judicial opinion in respect of the power of the Court to compel the exhibition of the injured member, and about that we express no opinion, as the question is not now before us; but the authorities are practically unanimous in favor of the proposition that the plaintiff may voluntarily exhibit the member with a view of showing the nature and extent of the injury, and we think the grounds upon which that privilege is so generally justified, with like force justify the voluntary performance of physical acts which are in themselves fit and appropriate as illustrations of the same fact.

The Court held, in *Selleck* v. *Janesville,* 41 L. R. A., 563, 565, that it was competent for the plaintiff, who sued for personal injuries, "to ex-

hibit her actual condition to the jury" by being carried into their presence and there giving her testimony while lying upon a lounge and being administered to by her physician.

Answering the defendant's suggestion that plaintiff's appearance upon the lounge with her attending physician was calculated to arouse the sympathy of the jury, the Court said: "If the condition and appearance of such party are genuine, then there is no good reason for concealing them. If, on the contrary, they are feigned, then the jury are quite likely to detect the pretension; and so the influence is liable to operate against the party as well as in his favor, according to the facts." *Ib.,* 565.

So in the present case the plaintiff had the right to impress his genuine condition upon the jury, and if that condition was not in fact as indicated by the exhibition and movements of his limb, his pretense was subject to detection and his cause to consequent prejudice.

In the case of *Graves* v. *City of Battle Creek* (Mich.), 19 L. R. A., 641, the trial Court refused to require the plaintiff to remove her glove and exhibit her injured arm. That ruling was reversed in the Supreme Court, which said: "The decisions are not uniform upon this question, but the very great weight of authority is in favor of the exercise of such power by the Court under proper conditions, the rule recognizing, however,

that a wide discretion is vested in the trial Court, which justifies a refusal to require the examination where the necessities of the case are not such as to call for it, or where the sense of delicacy of the plaintiff may be offended by the exhibition, or where the testimony would be merely cumulative, and where, in the judgment of the trial Court, it would not materially aid the jury. . . . The rule is recognized by substantially all the Courts of the country that the injured party may exhibit his wounds to the jury, in order to show their nature or extent, and that rule has been followed in this State. Testimony which is open to one party ought logically to be open to his opponent, if it can be obtained with due regard to decency and in the orderly conduct of the trial." *Ib.,* 642. Many of the adjudged cases on both sides of the disputed question are cited in the opinion.

The Supreme Court of the United States, though recognizing the right of voluntary exhibition, denied the power of the lower Court "to order a plaintiff, in an action for an injury to the person, to submit to a surgical examination in advance of the trial," in *Union Pacific Railway Company* v. *Botsford,* 141 U. S., 250; and the same ruling was made by the Court of Appeals of New York in *McQuigan* v. *Del., L. & W. R. Co.,* 14 L. R. A., 466. In those two cases, and especially in a note to the latter one, the con-

flicting decisions, or many of them, are arrayed and considered.

The action in *Hess* v. *Lowry* (Ind.), 7 L. R. A., 90, was by a patient against a physician for unskillful treatment of an injured shoulder. The Court said: "It was not error to permit the plaintiff below to exhibit his shoulder to the jury. The jury were, after seeing the condition it was in, better able to apply the evidence of the witnesses." *Ib.,* 92.

The language of the Court in *Carrico* v. *West Va. C. & P. R. Co.* (W. Va.), 24 L. R. A., 51, was this: "The plaintiff had a right to prove the hurt, and that it had entailed a lasting injury by causing the amputation and loss of his arm. He could prove that by oral evidence. He could himself stand before the jury for ocular demonstration of the fact; and why may he not intensify and make more certain the fact by inspection of the naked shoulder itself? It is only more and more conclusive evidence upon a fact which he was entitled to prove, and, being relevant, we cannot exclude it because there may have been danger of inspiring sympathy in the jury and increasing damages."

In Patterson on Railway Accident Law, at page 424, the author says: "A person injured may exhibit his injuries to the jury. Where, in his opinion, the interests of justice justify it, the Court may require the injured person to submit

to an examination by a competent and disinterested expert, on behalf of the railroad. So, also, the Court may, in its discretion, direct the person injured to perform, in the presence of the jury, a physical act which will necessarily test the nature and character of his physical injuries."

Elliott says: "It is well settled that, in an action for personal injuries, the plaintiff may be permitted, while testifying as a witness in his own behalf, to exhibit the injured part to the jury. It is also held in some jurisdictions that the plaintiff may be compelled to exhibit it or submit to surgical examination before trial, but there are nearly an equal number of authorities to the contrary." 4 Elliott on Railroads, Sec. 1699.

A properly taken X-ray photograph, showing the overlapping bones of the plaintiff's leg, which had been broken through the alleged negligence of the defendant, was, by this Court, held to be admissible as evidence in the late case of *Bruce* v. *Beall,* 99 Tenn., 303, Judge Beard, who delivered the opinion, saying, among other things in favor of its admissibility, that "the pictorial representation of the condition of the broken leg of the plaintiff gave to the jury a much more intelligent idea of the particular injury than they would have obtained from any verbal description of it by a surgeon, even if he had used for the purpose the simplest terms of his art." *Ib.,* 308.

In *Alberti* v. *N. Y., L. E. & W. R. Co.,* 6 L. R. A., 765, the New York Court of Appeals made a like ruling as to the admissibility of an ordinary photograph, which the plaintiff's physician testified was taken in his presence and accurately represented the manner in which the plaintiff's limbs had been contracted by the injury for which he sued.

In his testimony Hobbs narrated the facts attending and causing his injuries, in part, as follows:

"The next morning, after breakfast, I walked out on the front of the boat. We came in sight of the tent, and I told the captain, or rather the clerk, where I wanted to get off at, and he told the captain, and when we got to the landing the boat turned and came in to the landing. The mate and I were talking up on the upper deck, and he told me I had better go down on the lower deck and get on the stage plank to save time. I did as he told me, walking out on the stage. It was in the position it is usually carried, and I held to the guy ropes, supposing they would lower it, and instead of lowering it, why, they picked up the heel of the stage and started tilting it in the other direction, and gave me a start. I turned loose, supposing that they intended to lower the stage, to walk off, and I couldn't stop. I had to go or be thrown off in the river. There was no chance for me to stand

Packet Co. *v.* Hobbs.

there after the stage had been picked up, and it was about between four to six feet from the end of the stage to the ground, and when I struck the ground I struck it all in a heap. My knee got a sprain, and was in such a shape I couldn't walk at all; they had to take me and carry me in the tent, and I laid there and suffered for two weeks more than I ever suffered in my life."

The second assignment of error complains of the refusal of the Court to instruct the jury, as matter . of law, that the mate's direction to the plaintiff, as stated by him, did not mean that he should go upon the stage plank before it was properly placed in the correct position for a safe landing, and that "the plaintiff was not legally authorized to place such an interpretation" upon what the mate said.

It was undoubtedly the province of the jury, and not of the Court, to determine the meaning of the mate's order (*McGavock* v. *Wood,* 1 Sneed, 181); hence, the instruction, which so plainly asked the Court to intrude upon the peculiar domain of the jury, was unsound, and, being so, was properly refused.

The third assignment of error is based upon the Court's action in refusing the instruction just referred to, when so modified as to say that the mate's order did not have the meaning mentioned and did not legally authorize the plaintiff to so interpret it, "unless a person of ordinary

care and prudence would have" given it such interpretation.

The refusal of the modified instruction is justified by the fact that the Court had already covered the same point in the general charge, when he told the jury, in effect, that it was the plaintiff's duty, notwithstanding the mate's order, to exercise ordinary care and prudence in alighting from the boat, and that, if his injuries resulted from his failure to do so, he could have no recovery against the defendant.

It is not error for a trial Judge to refuse to give a special instruction, though entirely accurate, when the general charge, as in this instance, embraces substantially the same proposition. *Railroad* v. *Pugh,* 97 Tenn., 624; *Kaufman* v. *Fye,* 99 Tenn., 146; *Poole* v. *Jackson,* 93 Tenn., 63; *Railroad* v. *Reagan,* 96 Tenn., 129.

The fourth, fifth and sixth assignments of error raise the objection that "the jury was nowhere distinctly informed that such an accident [as that happening to the plaintiff] might occur without negligence of either party, and that if neither party was guilty of [as much as] ordinary negligence, their verdict should be for the packet company."

It is legally true, as assumed in this objection, that the defendant could not be liable for the consequences of a pure accident to which its negligence did not contribute, and it is also true, as

a fact, that the Court did not in so many words so instruct the jury; nevertheless, the objection is hypercritical and untenable, since the assignments themselves concede, as they must do in view of the record, that the Court more than once instructed the jury that the plaintiff must be found to have acted cautiously and the defendant negligently in the matter of his disembarkation before a verdict could be returned against the defendant.

The concession answers the criticism. Instruction that the defendant could not be liable unless it had been negligent meant, *ex vi terminorum,* that it must be excused from responsibility for a pure accident, in which its negligence had no part. The limitation of liability to the one condition necessarily excluded all idea of liability on the other condition. *Expressio unius est exclusio alterius.*

The seventh assignment of error calls in question that portion of the charge in which the Court instructed the jury, in substance, (1) that it was the duty of the plaintiff, upon being injured, to do all reasonably within his power to have his knee cured and restored to its original condition, and (2) that, if he selected and used all reasonably accessible means for that purpose, and, for a time upon his own judgment and without medical advice, adopted and pursued such treatment as a physician of ordinary care, prudence and skill would have used in treating an

injury, the law would accept that action on his part as a full discharge of his duty in that behalf, even though it might appear from the evidence at large that a more skillful treatment might have produced a more favorable result.

To our minds this instruction is entirely sound and unobjectionable. The first proposition announces the generally accepted doctrine that he who is injured in his person or in his property by the wrongful act of another should take reasonable precautions to repair the injury and prevent the enhancement of ultimate damage; and the second proposition rightly applies that doctrine.

It is not ground of just objection that the second proposition allowed the plaintiff credit for full performance of his duty, on condition that he should show the use of all reasonably accessible means for his cure and that he pursued upon his own judgment that course of treatment which would ordinarily have been adopted by a physician; for, if he did for himself what an ordinarily careful, prudent and skillful physician would have done for him, he thereby unquestionably answered the requirement of the law.

The same result must have followed the same treatment, no matter who the adviser may have been.

In no event will the wrongdoer be heard to say that the person injured was bound, at his peril, to secure the services of the most skillful

physician in the community, or to adopt the treatment. which in the end would prove to be the most efficacious.

The exercise of reasonable and ordinary care and prudence according to the circumstances of the case, is all the law demands; and when that is shown the plaintiff's damages, otherwise recoverable, cannot be diminished upon the ground that extraordinary efforts on his part might have made his ultimate injury less. *Selleck* v. *Jamesville* (Wis.), 41 L. R. A., 563, 565-6; 2 Thompson on Neg., 1258, note *b,* citing *Indianapolis* v. *Gaston,* 58 Ind., 227.

That the injured person is bound to exercise only reasonable and ordinary care in the employment of a physician is forcibly illustrated in those cases where the defendant is adjudged responsible for full damages, although the physician so employed may have enhanced the damages by mistaken or unskillful treatment. 2 Thompson on Neg., 1091; *Selleck* v. *Jamesville,* 41 L. R. A., 565-6.

"That an injured party does not adopt the best remedies or follow implicitly the directions of a physician," says the Supreme Court of Arkansas, "will not excuse a wrongful injury which produces, as its direct effect, a disease from which death ensues." *Railway* v. *Orr,* 46 Ark., 182.

The Court in *Railway Co.* v. *Zantzinger,* 44 L. R. A., 553, 556, stated the general rule to

be that of ordinary care, but ruled that the mere failure to exercise that degree of care would. not preclude a plaintiff, upon whom an injury had been willfully inflicted, from recovering all damages sustained, including that part which might have been prevented by the use of such care.

The eighth and last assignment of error complains of the recovery as excessive. The verdict was for $6,200, but the plaintiff remitted $2,200, and judgment was entered for $4,000.

Plaintiff was a comparatively young man with sound body, long expectancy of life and good earning capacity at the time he was injured; but, after great and protracted suffering, he appeared at the trial as one permanently disfigured and crippled, with only about half his former ability to earn a living for himself and family—the change having been wrought, as the jury found, by the negligence of the defendant. Such a recovery for such an injury cannot be truly said to be excessive. The amount, whether that of the verdict or that of the judgment be regarded as the true criterion here, is in neither case so large as to indicate passion, prejudice, partiality, caprice or corruption on the part of the jury, and yet, it must be of that magnitude to justify this Court in granting a new trial for excessiveness. *Boyers* v. *Pratt,* 1 Hum., 93; *Goodall* v. *Thurman,* 1 Head, 217; *Railroad* v. *Roddy,* 85 Tenn.,

Packet Co. *v.* Hobbs.

400; *Cherokee Packet Co.* v. *Hilson,* 95 Tenn., 7; *Jenkins* v. *Hankins,* 98 Tenn., 545; *Bank* v. *Bawdre Bros.,* 92 Tenn., 724; *Brown* v. *Odill,* 104 Tenn., 250.

Let the judgment be affirmed.