IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2000

**CAROLYN B. BEASLEY COTTON COMPANY v. KEM RALPH,
Individually and d/b/a RALPH BROTHERS**

**Direct Appeal from the Chancery Court for Tipton County
No. 15,011      Dewey C. Whitenton, Chancellor**

-------

**No. W1999-00273-COA-R3-CV - Filed October 25, 2000**

-------

This appeal arises from a breach of contract between Farmer and Broker. After signing a contract to deliver cotton to Broker, Farmer failed to do so. Broker was then forced to purchase the cotton elsewhere for a substantial loss and brought suit to recover the losses. At the start of the trial, Farmer requested that the trial court dismiss the case and order the parties to proceed to arbitration. Finding that Farmer had waived his rights under the contract to arbitration, the trial court refused. Proceeding with the case, court found that Farmer had breached the contract and awarded damages to Broker. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and
Remanded.**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

David M. Livingston, Brownsville, Tennessee, for the appellant, Kem Ralph.

Russell W. Savory, Memphis, Tennessee, for the appellee, Carolyn B. Beasley Cotton Company.

**OPINION**

On May 25 and again on June 8, 1995, Kem Ralph entered into written contracts with the Carolyn B. Beasley Cotton Company (Beasley).[1] Each contract stated that Mr. Ralph would sell Beasley 100 bales of cotton during the 1995-96 crop year. The dispute in this case arose sometime between December of 1995 and February of 1996, with each party arguing a different set of facts. Mr. Ralph claims that he informed Beasley in December of 1995 that he would be unable to fulfill his contracts. Beasley claims that it had no notice that Mr. Ralph intended to breach these contracts

-------

[1]While Beasley and Mr. Ralph entered into several additional contracts during this period, in this case we are only concerned with the two cotton delivery contracts on May 25, and June 8, 1995.

until it sent demands for delivery in late January and early February of 1996 that went unanswered. It is undisputed, however, that Beasley received no cotton from Mr. Ralph and had to purchase cotton on the open market to fulfill its obligations, resulting in a loss to Beasley of $13,050. Beasley demanded reimbursement from Mr. Ralph for this loss, and upon receiving no reply, filed suit for breach of contract.

Both sides conducted pre-trial discovery before the trial date set in August, 1997. However, at the beginning of this trial, Mr. Ralph moved the court that the case be sent to binding arbitration as provided in the contract. The trial court then delayed the start of the trial and took this request under consideration. Thereafter, the court found that Mr. Ralph, by his failure to request arbitration before the scheduled start of the trial, had waived his right to arbitration and denied the motion. The trial was conducted in March 1999. The court rejected Mr. Ralph's arguments that the contracts had no set price and were thus unenforceable. It also found that Beasley had acted properly to mitigate its damages. As such, Mr. Ralph was ordered to pay $13,050 in damages, plus pre-judgment interest, attorney's fees and court costs. This appeal followed.

The issues presented by the appellant on appeal, as we perceive them, are as follows:

1.     Did the trial court err in denying the motion to transfer this matter to arbitration as provided under the contract?

2.     Did the trial court err in failing to find the contract void due to contradicting terms regarding price?

3.     Did the trial court err in failing to reduce the damages through a finding that Beasley did not act to mitigate its damages?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d). The interpretation of a written contract is a matter of law, and thus, no presumption of correctness in its interpretation exists. *See NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791 (Tenn. Ct. App. 1997).

**Arbitration**

This court recently addressed the question of the waiver of arbitration in ***Rebound Care Corp. v. Universal Constructors, Inc.***, No. M1999-00868-COA-R3-CV, 2000 WL 758610, at \*1 (Tenn. Ct. App. June 13, 2000) (***no perm. app. filed***). We stated in that case that

> [i]n general, even in those jurisdictions where a contract for arbitration is irrevocable, the right to arbitration under the contract may be waived either by express words or by necessary implication, for example, where the conduct of a party clearly indicates an intent to waive the right to arbitrate. In those cases involving the issue of whether the defendant's participation in an action constitutes a waiver of the right to arbitrate the dispute involved therein, no general rules are readily apparent for determining waiver other than the general adherence by the courts to the principle that waiver is to be determined from the particular facts and circumstances of each case. . . .

***Id.*** at \*7 (citation omitted). Examining further, we noted that "[w]aiver is a matter of fact to be shown by the evidence." ***Id.*** at \*6 (quoting ***Koontz v. Fleming***, 65 S.W.2d 821, 824 (Tenn. Ct. App. 1933)).

The determination of whether Mr. Ralph waived his right to arbitration is a factual determination for the trial court. Thus, we may not reverse the court's findings in this matter unless it is contrary to the preponderance of the evidence. ***See, e.g., Randolph v. Randolph***, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). Upon our examination of the record, we note several actions by Mr. Ralph that suggest he waived his right to arbitration. As stated in the trial court's opinion denying the motion to proceed to arbitration, Mr. Ralph filed an answer to Beasley's original Complaint For Damages, as well as an answer to Beasley's Request for Production of Documents. In addition, Mr. Ralph took pretrial depositions, filed pretrial motions and attended pretrial settlement conferences. Indeed, Mr. Ralph made no mention of the arbitration clause until the original trial court date when he filed a motion to refer the matter to arbitration. With this evidence, we cannot state that the trial court's ruling is contrary to the preponderance of the evidence. As such, we hereby affirm the trial court's decision that Mr. Ralph, through his actions surrounding this dispute, waived his right to arbitration under the contract.

### Validity of the Contracts

In determining the validity of a contract, the court should "ascertain the intention of the parties from the contract as a whole and . . . give effect to that intention consistent with legal principles." ***Winfree v. Educators Credit Union***, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995), ***perm. app. denied*** (Tenn. May 01, 1995) (citations omitted). The words expressing the intentions of the parties should be given their usual and ordinary meanings. ***See Taylor v. White Stores, Inc.***, 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985). Thus, it is necessary for this court to examine the disputed portion of the contract to ascertain the intentions of the parties. This examination will allow us to determine if the parties formed the meeting of the minds required for a valid contract.

Mr. Ralph argues that the contract he entered into with Beasley did not represent a meeting of the minds between the two parties as to the price to be paid. The price portion of the disputed contract states:

> PRICE AND OTHER TERMS: THE PRICES TO BE PAID FOR ACCEPTABLE COTTON SHALL BE AS FOLLOWS:
> **\_\_73.00 NET\_\_**, 41 COLOR 4 & BETTER LEAF, 34 AND LONGER STAPLE, 3.5-4.9 MICRONAIRE 1994-95 C.C.C. LOAN DISCOUNTS TO APPLY EXCEPT: 1- NO PREMIUM FOR STAPLE LONGER THAN 1-1/16". 2- 50 POINTS PREMIUM PAID FOR 31 & BETTER COLOR 3 & BETTER LEAF AND 1-1/16" & LONGER. 3- THERE WILL BE NO PREMIUM PAID FOR LEAF GRADES HIGHER THAN THE CORRESPONDING COLOR GRADES (I.E. A 51 COLOR WITH 3 LEAF WILL BE PAID AR THE 51-5 VALUE.) 4- NO MICRONAIRE OR STRENGTH PREMIUMS. 5- NO PREMIUM FOR COLOR GRADE 31 LEAF 4. 6- REMARKS AND/OR EXTRANEOUS MATTER DISCOUNTED AN ADDITIONAL 250 PTS. RULE 5 OF THE MEMPHIS COTTON EXCHANGE TO GOVERN. MODULE AVERAGING FOR CLASSIFICATION ACCEPTED OR REJECTED AT BUYERS OPTION. COTTON WITH WAREHOUSE RECEIPTS DATED AFTER DECEMBER 25, 1995, SHALL BE DISCOUNTED 200 POINTS ON THIS CONTRACT.
> (73.00 LESS RESEARCH AND PROMOTION FEES, IF COMPRESS CHARGES REMAIN THE SAME.)

Mr. Ralph argues that "73.00 NET" was the price he believed he would be paid upon the delivery of his cotton. In his testimony, he describes the net price as the money he would be paid after "[a]ll the deductions." Beasley believed that the contract provided for a price of "73.00 less research and promotion fees." Thus, Mr. Ralph argues that as he believed that the price was to be "73.00 NET" and Beasley believed the price to be paid was "73.00 less research and promotion fees" and, as such, there was no meeting of the minds.

We believe that Mr. Ralph's argument ignores the clear language of the contract. It is apparent from the contract that the parties intended the price to be paid as "73.00 less research and promotion fees." While the term "73.00 NET" may have been confusing, the section of the contract referring to price clearly states what the final price would be for Mr. Ralph's cotton. Indeed, Mr. Ralph's own expert, Mr. Jim Nunn, testified on this matter. He stated that "the net price was the price *unless the contract specified certain deductions*." Mr. Ralph's expert went on to examine the contracts in this case and noted the contracts provided "the seller pays the research and promotion." From this testimony, it is evident that the contract clearly presented that the final price to be paid for Mr. Ralph's cotton was "73.00 less research and promotion fees." The contract between them was valid and we affirm the trial court's finding that a valid contract existed between the parties.

## Mitigation of Damages

"It is a well established rule in Tennessee that the party injured by the wrongful act of another has a legal duty to exercise reasonable and ordinary care under these circumstances to prevent and diminish the damages." *North Carolina Mut. Life Ins. Co. v. Evans*, Shelby Law No. 66, 1990 WL 212854, at *3 (Tenn. Ct. App. Dec. 31, 1990) (citing *Arkansas River Packet Co. v. Hobbs*, 58 S.W. 278 (Tenn. 1900)). However, an injured party is not required to make extraordinary efforts. *See id.* "[T]he burden of showing that losses could have been avoided by the plaintiff by a reasonable effort to mitigate damages after defendant's breach of contract is on the defendant who breached the contract." *Id.* (citations omitted).

We note that a plaintiff is only required to mitigate damages *after* the defendant's breach of a contract. Thus, the essential question that must be answered in this case is exactly when the contract was breached by Mr. Ralph. Only after we determine the exact moment of the breach of the contract can we determine if Beasley properly acted to mitigate its damages. If, as Mr. Ralph argues, he breached the contract in December of 1995, then Beasley was under a duty to act promptly to mitigate its damages. If the breach occurred in late January or early February of 1996, then Beasley properly acted to mitigate its damages.

In this case, the exact moment of the breach is a question of fact for the trial court to decide. From the court's ruling that Beasley was entitled to $13,050 in actual damages, it is clear that the court found that the contract between the parties had been breached in late January or early February of 1996. As such, the trial court necessarily found that Beasley properly acted to mitigate its damages. As already stated in this opinion, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). Upon our examination of the record, we cannot say that this finding is contrary to the preponderance of the evidence. Thus, we hereby affirm the trial court's decision on the date of the breach of the contract and its finding that Beasley acted properly to mitigate its damages.

## Conclusion

Based on the foregoing conclusions, we hereby affirm the judgment of the trial court. Costs on appeal are assessed against the appellant, Kem Ralph, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE