# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
September 24, 2013 Session

## JONATHAN BURKE SKELTON v. FREESE CONSTRUCTION COMPANY, INC.

**Direct Appeal from the Chancery Court for Rutherford County**
No. 90031CV      Robert E. Corlew, III, Chancellor

No. M2012-01935-COA-R3-CV - Filed December 9, 2013

This appeal involves the enforceability of an arbitration agreement between the parties. The trial court found the agreement was not unconscionable, but that the defendant had waived its right to enforce the agreement. We reverse the decision of the chancery court and we remand for entry of an order compelling arbitration.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined, and HOLLY M. KIRBY, J., concurred in result only.

J. Timothy Crenshaw, Nashville, Tennessee, for the appellant, Freese Construction Company, Inc.

Timothy H. Nichols, Nashville, Tennessee, for the appellee, Jonathan Burke Skelton

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

This appeal involves the enforceability of an arbitration agreement between the parties.  The defendant, Freese Construction Company, Inc. ("Defendant" or "Freese"), acted as the general contractor for construction of the Murfreesboro Medical Clinic.  In 2008, Outdoors Unlimited, LLC entered into a Subcontract Agreement with Freese to provide landscaping and irrigation improvements for the project.

The Subcontract Agreement identified "Outdoors Unlimited, LLC" as the "Subcontractor" and Freese as the "Contractor[,]" and it included the following arbitration clause:

> Notwithstanding any dispute clauses contained in the General Conditions or the contract with the Owner, the Subcontractor agrees that in the event of a dispute between the Subcontractor and Contractor, the dispute may be submitted to arbitration at the sole option of Contractor.  Arbitration shall be binding and held in accordance with rules and procedures to be agreed by the parties.  If no agreement can be reached within twenty (20) days of demand, the arbitration will be held in accordance with the Construction Industry Rules of the American Arbitration Association which are in effect at the time the demand for arbitration is filed.  Once Contractor has chosen arbitration and so advised Subcontractor in writing, should either party refuse or neglect to appear or participate in arbitration proceedings, the arbitrators are empowered to decide the controversy in accordance with whatever evidence is presented.  The arbitrators are authorized to award any party or parties such sums as such arbitrators shall deem proper for the time, expense and trouble of arbitration, including attorneys' fees and other litigation expenses.  In the event of a dispute over the arbitrability of a dispute, the arbitrator has exclusive jurisdiction to decide the arbitrability of the dispute.

> In the event of litigation or arbitration to enforce any of the terms and provisions of this Agreement, the prevailing party shall be entitled to receive all reasonable litigation expenses, including attorneys' fees, incurred therein (including fees and expenses for appeals) together with the costs and disbursements.  In no event shall said attorneys' fees be based on a contingency fee bases.  Attorneys' fees shall be computed on an hourly basis.

A dispute arose regarding the sufficiency of work performed by Outdoors Unlimited, LLC and payment for that work. On January 12, 2009, Jonathan Burke Skelton, individually, filed a "Verified Complaint to Enforce Mechanics' and Materialmen's Lien" ("Complaint") against Freese, among others. The Complaint identified Mr. Skelton as "the owner of Outdoors Unlimited . . . , which is a sole proprietorship[.]" In the Complaint, Mr. Skelton asserted numerous claims against Freese, and he sought, among other things, a judgment of $144,916.98.

Before any of the defendants filed an answer, Mr. Skelton filed an Amended Complaint, on February 20, 2009, to add a defendant and to replace his "mechanics' and materialmen's lien" claim with a "claim against payment bond."

On June 2, 2009, Freese filed a "Motion to Dismiss Jonathan Burke Skelton's Complaint or, in the Alternative, for Judgment on the Pleadings[.]" Freese argued that Mr. Skelton, who was not a party to the Subcontract Agreement, lacked standing to assert claims against Freese. Freese's motion was scheduled to be heard on August 12, 2009. However, according to the affidavit testimony of Freese's attorney, J. Timothy Crenshaw, when the case was called at the August 12, 2009 hearing, Mr. Skelton's counsel requested that he be allowed to amend his complaint a second time. Freese did not oppose the motion, and the trial court granted Mr. Skelton ten days in which to file an amended complaint and it stated that Freese could then re-set its motion to dismiss.

Mr. Skelton, however, did not file an amended complaint within ten days of the hearing. Counsel for the various defendants lodged a proposed order with the trial court in October 2009, which the trial court entered on November 5, 2009. The Order directed Mr. Skelton to file an amended complaint within ten days, and it stated that Freese, thereafter, could re-set its motion to dismiss for hearing. Mr. Skelton, however, again failed to file an amended complaint.

On January 29, 2010, Mr. Skelton's counsel filed a Motion to Withdraw, which was scheduled to be heard on March 4, 2010. It appears that no action was taken, and Mr. Skelton's counsel filed a second Motion to Withdraw on September 2, 2010. The second motion was heard on September 17, 2010, after which the trial court entered an Order to Withdraw, directing Mr. Skelton to secure replacement counsel within thirty days.

It appears that no further action was taken in the case until March 29, 2011, when Freese filed a Notice of Hearing scheduling its previously-filed Motion to Dismiss for a hearing on April 7, 2011. Along with its Notice of Hearing, Freese also filed a "Supplemental Memorandum in Support of Motion to Dismiss" raising Mr. Skelton's failure to comply with the November 5, 2009 order directing the filing of an amended complaint and

his failure to prosecute the suit as additional grounds for dismissal.

On April 6, 2011, one day before Freese's Motion to Dismiss was scheduled to be heard, Timothy H. Nichols filed a Notice of Appearance as Mr. Skelton's counsel. That same day, Mr. Skelton filed a Response in opposition to Freese's Motion to Dismiss as well as a Second Amended Complaint naming "Jonathan Burke Skelton d/b/a Outdoors Unlimited, LLC and d/b/a Outdoors Unlimited" as the plaintiff. Attached to his Second Amended Complaint was the Affidavit of Jonathan Burke Skelton, which stated in part:

> Prior to January 15, 2008, I filed papers with the Tennessee Secretary of State to form a single member Tennessee limited liability company called "Outdoors Unlimited, LLC," with myself as a sole member of that entity. As of January 15, 2008, I believed that Outdoors Unlimited, LLC had, in fact, been successfully formed. However, unbeknownst to me, issues with the paperwork submitted by me to form Outdoors Unlimited, LLC caused the Secretary of State to reject the papers submitted to form Outdoors Unlimited, LLC.

> Operating under the belief that I had successfully formed "Outdoors Unlimited, LLC", on January 15, 2008, I signed a subcontract . . . with Freese Construction to furnish labor and materials to construct the landscaping and irrigation improvements on a construction project known as the Murfreesboro Medical Clinic . . . on which Freese was the general contractor.

> Following execution of the Subcontract and performance of work on the Project, I learned that I had not, in fact, successfully formed "Outdoors Unlimited, LLC". Thereafter, I did ultimately succeed in forming an entity named "Outdoors Unlimited, LLC".

In his affidavit, Mr. Skelton expressed dissatisfaction with his former attorney and he indicated that he was unaware that the former attorney had failed to comply with the November 5, 2009 order.

Following a hearing on April 7, 2011, the trial court denied Freese's Motion to Dismiss. However, it found that Mr. Skelton's Second Amended Complaint, filed on April 6, 2011, was "of no effect" because it failed to comply with Rule 15 of the Tennessee Rules of Civil Procedure. On May 10, 2011, an "Agreed Order Allowing Second Amended Complaint" was entered, and on May 19, 2011, Mr. Skelton filed a second "Second Amended Complaint," again naming "Jonathan Burke Skelton d/b/a Outdoors Unlimited, LLC and d/b/a Outdoors Unlimited" ("Mr. Skelton") as the plaintiff.

-4-

On July 15, 2011, Mr. Skelton filed a Motion for Default Judgment against Freese based upon its failure to respond to his May 2011 Second Amended Complaint. On July 17, 2011, Freese answered the Second Amended Complaint generally denying the allegations against it and setting forth seventeen affirmative defenses. The fifteenth affirmative defense stated:

> Freese asserts that the Subcontract provides that disputes between Subcontractor and Freese may be submitted to arbitration at the sole option of Freese and Freese expressly reserves the right to require arbitration of this dispute pursuant to the terms of the Subcontract.

On July 28, 2011, Mr. Skelton struck his Motion for Default Judgment. According to the Affidavit testimony of Freese's counsel, during the months after Freese filed its July 2011 answer to Mr. Skelton's May 2011 Second Amended Complaint, the parties' counsel "had several phone conversations . . . regarding the arbitration provision and the possibility of the parties agreeing to arbitrate without the necessity of . . . filing a motion to compel arbitration[.]" However, Mr. Skelton would not agree to submit the claim to arbitration, and in November 2011, he filed a "Motion to Set and for Scheduling Order" to be heard on December 12, 2011. By agreement of the parties, the hearing was rescheduled for December 22, 2011; however, the hearing did not occur and Mr. Skelton struck his Motion to Set and for Scheduling Order on December 28 noting that it would be "re-filed if it [could not] be resolved by agreement." According to the Affidavit testimony of Freese's counsel, after Mr. Skelton filed his November 2011 Motion to Set and for Scheduling Order, Freese's counsel informed Mr. Skelton's counsel of his intent to file a motion to compel arbitration and the parties' counsel "communicated on several occasions [between November 2011 and February 2012] in regard to the filing and scheduling of the hearing on that motion."[1]

On February 15, 2012, Freese filed a "Motion to Compel Arbitration and to Stay Case Pending Arbitration" citing the Subcontract Agreement. Mr. Skelton responded in opposition to the motion arguing that Freese had waived its right to arbitrate by participating in the litigation. Alternatively, Mr. Skelton contended that the arbitration clause was unconscionable because it was contained within an adhesion contract and that enforcement of the clause would, likewise, be unconscionable because of the delay in seeking arbitration and the possibility of requiring Mr. Skelton to fund both litigation and arbitration expenses. Along with his response, Mr. Skelton filed his Affidavit which provided in part:

---

[1]The Affidavit of Mr. Skelton's attorney confirms that these discussions took place; however, Mr. Skelton's counsel emphasizes that "[a]t no time did the parties agree to arbitrate the dispute[.]"

During the course of and as a result of this litigation, my financial condition has worsened. I have incurred substantial legal fees and other litigation expenses during the past 24 months that this lawsuit has been pending. I am now working two jobs to support myself and my family.

. . . .

> The practical effect of having to pay the fees and costs of arbitration could be to preclude me from obtaining a decision on the merits of my case. I am currently unable to pay any fees or costs associated with an arbitration that might be ordered in this case.

Following a hearing on March 5, 2012, the trial court entered an order on March 27, 2012, denying Freese's Motion to Compel Arbitration. The trial court found that the arbitration clause was not unconscionable, but that Freese had waived its right to enforce such based upon its participation in the litigation process, namely its filing of an Answer to Mr. Skelton's Second Amended Complaint and its responses to Mr. Skelton's discovery requests. Freese filed a Motion to Alter or Amend, which, after a hearing on June 13, 2012,[2] the trial court denied.[3] Freese timely appealed to this Court.

## II. ISSUES PRESENTED

On appeal, Freese challenges the trial court's refusal to order arbitration of the dispute.[4] In contrast, Mr. Skelton argues that the trial court correctly refused to order arbitration because Freese waived its right to arbitration, or alternatively, because the arbitration clause is unconscionable. For the following reasons, we reverse the decision of the chancery court and we remand for entry of an order compelling arbitration.

---

[2] A transcript of the trial court's June 13, 2012 ruling on Freese's Motion to Alter or Amend is included in the record before us.

[3] The trial court inadvertently entered conflicting orders with respect to the denial of Freese's Motion to Alter or Amend. However, the trial court set aside the conflicting orders and it entered a new order denying the motion to alter or amend on August 3, 2012.

[4] In his appellate brief, Mr. Skelton lists as an issue for review, "whether Freese's delay in filing its motion to compel arbitration violates its implied duty of good faith and fair dealing." We decline to address this issue, however, because it appears that it is raised for the first time on appeal. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006).

## III.  DISCUSSION

### A.  Waiver

As stated above, the trial court found that Freese had waived its right to enforce the arbitration clause based upon its participation in the litigation process, namely its filing of an Answer to Mr. Skelton's Second Amended Complaint and its responses to Mr. Skelton's discovery requests.

"'[A]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon.'" ***Wilson v. Battle Creek Milling & Supply, Inc.***, No. M2007-02830-COA-R3-CV, 2008 WL 5330498, at *3 (Tenn. Ct. App. Dec. 19, 2008) (quoting *J. C. Bradford & Co., L.L.C. v. Kitchen*, No. M2002-00576-COA-R3-CV, 2003 WL 21077643, at *3 (Tenn. Ct. App. May 14, 2003)).  As recently explained by this Court,

> Waiver "may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct." *Chattem,* [*Inc. v. Provident Life & Acc. Ins. Co.,*] 676 S.W.2d [953,] 955 [Tenn. 1984].  Stated another way, "waiver is proven by a clear, unequivocal and decisive act of the party, showing a purpose to forgo the right or benefit which is waived." *E & A Ne. Ltd. P'ship* [*v. Music City Record Dist., Inc.,* No. M2005-01207-COA-R3-CV,] 2007 WL 858779, at *7 [Tenn. Ct. App. Mar. 21, 2007].  "The law will not presume a waiver, and the party claiming the waiver has the burden of proving it by a preponderance of the evidence." *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998).  Generally, whether a waiver of a contractual provision has occurred in a given factual setting is a question of fact[.] *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003).[5]

***GuestHouse Intern.***, 330 S.W.3d at 202.  "To the extent that the issue of waiver involves questions of fact, our review is *de novo* with a presumption that the judgment is correct." ***J.C. Bradford & Co., LLC v. Kitchen***, No. M2002-00576-COA-R3-CV, 2003 WL 21077643, at *2 (Tenn. Ct. App. May 14, 2003) *perm. app. denied* (Tenn. Dec. 15, 2003) (citing Tenn. R. Civ. P. 13(d)).

---

[5]In *Guesthouse*, this Court cited with approval JOSEPH M. PERILLO & HELEN HADJIYANNAKIS BENDER, CORBIN ON CONTRACTS § 11:29(c), which explained that "contractual *rights* are not waivable, *conditions* are."  330 S.W.3d at 201.

In finding waiver by Freese through its course of conduct, the trial court noted that Freese "has participated in the litigation for a substantial period" and "has filed a small number of pleadings and has pursued hearings, and has sought the decision of the Court with regard to preliminary issues on more than one occasion." Specifically, the court cited Freese's filing an answer to the Second Amended Complaint and its responses to Mr. Skelton's requests for production of documents and interrogatories.[6] In addition to Freese's answer and discovery responses, Mr. Skelton points out that Freese filed a Motion to Dismiss, and it argues that Freese waived its right to arbitrate the dispute by "wait[ing] approximately [three] years after the commencement of litigation before filing its Motion to Compel Arbitration."

Mr. Skelton is correct that the lawsuit was commenced in January 2009 and Freese did not file its Motion to Compel Arbitration for over three years–until February 2012. However, given the unique procedural history of this case, the time lapse is not dispositive of the waiver issue. Mr. Skelton's 2009 Complaint was brought in his own name, and Freese moved to dismiss the case alleging that Mr. Skelton lacked standing because he was not a party to the Subcontract Agreement. Freese's motion was scheduled for a hearing in August 2009, but when the case was called at that hearing, Mr. Skelton's counsel requested that he be allowed to amend his complaint. Freese consented, and Mr. Skelton was given ten days in which to file an amended complaint. When Mr. Skelton failed to do so, Freese obtained an order requiring Mr. Skelton to amend his complaint within ten days of the November 2009 order. Mr. Skelton, again, failed to file an amended complaint.

Nothing happened in the case until January 2010 when Mr. Skelton's counsel filed a Motion to Withdraw. It appears that no action was taken on the motion, however, and his counsel filed a second Motion to Withdraw nine months later, in September 2010. In September 2010, Mr. Skelton's counsel was allowed to withdraw, and Mr. Skelton was directed to secure replacement counsel within thirty days; Mr. Skelton failed to do so.

Freese, then, in March 2011, took the initiative to resolve the stalled matter by re-scheduling its Motion to Dismiss for hearing, raising as additional grounds for dismissal, Mr. Skelton's failure to amend his complaint as ordered and his failure to prosecute the suit. One day before Freese's Motion to Dismiss was scheduled to be heard, Mr. Skelton's current counsel appeared in the case. That same day, Mr. Skelton filed a response to the Motion to Dismiss and a Second Amended Complaint naming "Jonathan Burke Skelton d/b/a Outdoors

---

[6]Freese's responses to Mr. Skelton's requests for production of documents and interrogatories are not included in the record on appeal. However, the trial court's March 8, 2012 Memorandum Opinion states, "The file reflects that [Mr. Skelton] submitted written interrogatories to [Freese], which [Freese] answered and served on [Mr. Skelton] on or about August 30, 2011."

Unlimited, LLC and d/b/a Outdoors Unlimited" as the plaintiff.

It appears that no further action was taken in the case until March 29, 2011, when Freese filed a Notice of Hearing scheduling its previously-filed Motion to Dismiss for a hearing on April 7, 2011. Along with its Notice of Hearing, Freese also filed a "Supplemental Memorandum in Support of Motion to Dismiss" raising Mr. Skelton's failure to comply with the November 5, 2009 order directing the filing of an amended complaint and his failure to prosecute the suit as additional grounds for dismissal.

On April 6, 2011, one day before Freese's Motion to Dismiss was scheduled to be heard, Timothy H. Nichols filed a Notice of Appearance as Mr. Skelton's counsel. That same day, Mr. Skelton filed a Response in opposition to Freese's Motion to Dismiss as well as a Second Amended Complaint naming "Jonathan Burke Skelton d/b/a Outdoors Unlimited, LLC and d/b/a Outdoors Unlimited" as the plaintiff. Along with these documents, Mr. Skelton filed an affidavit explaining, for the first time, why the Complaint had not been filed by Outdoors Unlimited, LLC. Mr. Skelton's April 2011 Second Amended Complaint, however, was found to be ineffective, and Mr. Skelton ultimately filed his Second Amended Complaint naming "Jonathan Burke Skelton d/b/a Outdoors Unlimited, LLC and d/b/a Outdoors Unlimited" as the plaintiff in May 2011.

Only two months later, Freese answered the Second Amended Complaint, in which it "expressly reserve[d]" the right to arbitrate the dispute pursuant to the Subcontract Agreement. In the ensuing months, the parties' counsel engaged in discussions regarding the possibility of amicably submitting the dispute to arbitration. When it became apparent that an agreement could not be reached, Freese's counsel notified Mr. Skelton's counsel of his intent to file a motion to compel, which was filed in February 2012.

The evidence in this case belies Mr. Skelton's assertion that Freese wrongfully delayed the filing of its Motion to Compel Arbitration. Rather, the evidence supports the trial court's finding that "the delay in proceeding within the case has been occasioned in substantial part by [Mr. Skelton.]" Mr. Skelton did not amend his Complaint to name "Jonathan Burke Skelton d/b/a Outdoors Unlimited, LLC and d/b/a Outdoors Unlimited" as the party plaintiff until April 2011–over two *years* after the initial Complaint was filed. In contrast, two *months* after the Second Amended Complaint was filed, Freese reserved its right to arbitrate the dispute, and shortly after it discovered that Mr. Skelton was not amenable to arbitration, it filed its Motion to Compel.

In finding that Freese's participation in the litigation constituted waiver, the trial court relied upon the case of *Carolyn B. Beasley Cotton Co. v. Ralph*, 59 S.W.3d 110 (Tenn. Ct. App. 2000). In *Beasley*, this Court found that the defendant farmer had waived his right to

arbitrate disputes between himself and the plaintiff broker, as provided for in written contracts between the parties. *Id.* at 113. In making this determination, we "note[d] several actions by [the defendant] that suggest[ed] he [had] waived his right to arbitration[:]" the defendant answered both the plaintiff's complaint and his request for production of documents; the defendant took pretrial depositions, he filed pretrial motions and he attended pretrial settlement conferences; and the defendant "made no mention of the arbitration clause until the original trial court date when he filed a motion to refer the matter to arbitration." *Id.*

We find *Beasley* distinguishable from the instant case, and therefore, we disagree that *Beasley* compels a finding of waiver in this case. In *Beasley*, the party seeking to enforce the arbitration provision conducted pre-trial discovery and, importantly, it "made no mention of the arbitration clause" until the day of trial. *Id.* at 113. In contrast, Freese has conducted no discovery in this case and it expressly reserved its right to arbitrate shortly after Mr. Skelton filed his Second Amended Complaint naming the parties to the Subcontract Agreement–and its arbitration clause–as the parties to the lawsuit. Additionally, after learning that Mr. Skelton would not agree to arbitration, Freese promptly notified Mr. Skelton's counsel of his intent to file a motion to compel, and such motion was timely filed, apparently before a trial date was even set. Although Freese filed a Motion to Dismiss in this case, it did so before the limited liability company party to the Subcontract Agreement was identified as a party to the lawsuit–thus, ostensibly before arbitration could have been compelled. In sum, we find the evidence before us preponderates against the trial court's finding of waiver as it fails to demonstrate that Freese "clear[ly], unequivocal[ly] and decisive[ly]" acted to forego its right to arbitrate. *See GuestHouse Intern.*, 330 S.W.3d at 202 (citation omitted).

### B. Unconscionable Contract of Adhesion

Having determined that Freese did not waive its right to arbitration, we now consider whether the arbitration clause should, nonetheless, be held unenforceable as an unconscionable contract of adhesion. The determination of whether a contract provision, including an arbitration clause, is unconscionable is a question of law, which we review *de novo* without a presumption of correctness. *See Taylor v. Butler*, 142 S.W.3d 277, 284-85 (Tenn. 2004)).

> An adhesion contract has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." Professor Henderson has observed that "the essence of an adhesion contract is that the

-10-

bargaining position and leverage enable one party to select and control risks assumed under the contract." Courts generally agree that "[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms."

*Webb v. First Tenn. Brokerage, Inc.*, 2013 WL 3941782, at *17 (Tenn. Ct. App. June 18, 2013) (quoting *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996)).

"If a contract is one of adhesion, the next question is whether it contains such unconscionable or oppressive terms as to render it unenforceable." *Id.* (citing *Bradczynski*, 919 S.W.2d at 320). An adhesion contract is not enforceable if its terms are "'beyond the reasonable expectations of an ordinary person,'" "'oppressive,'" or "'unconscionable.'" *Id.* (quoting *Buraczyski*, 919 S.W.2d at 320). As our Supreme Court has stated, "'[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract.'" *Id.* (quoting *Taylor*, 142 S.W.3d at 285). "Enforcement of a contract is generally refused on grounds of unconscionability where the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Taylor*, 142 S.W.3d at 285 (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). "'In determining whether a contract is unconscionable, a court must consider all the facts and circumstances of a particular case. If the provisions are then viewed as so one-sided that the contracting party is denied an opportunity for a meaningful choice, the contract should be found unconscionable.'" *Webb*, 2013 WL 3941782, at *17 (quoting *Haun*, 690 S.W.2d at 872).

On appeal, Mr. Skelton argues that the arbitration clause should be deemed unenforceable because it is an unconscionable provision within an adhesion contract. He terms the contract one of "adhesion" citing his Affidavit in which he testified that the contract, aside from the price of his work, was "presented to him on a 'take it or leave it' basis[,]" and he contends that the arbitration clause is unconscionable because it allowed only Freese–and not him–to compel arbitration. In response, Freese contends that the contract is not one of adhesion because Mr. Skelton is a commercial party–not a "consumer[] of goods and services"–and that its terms are not unconscionable because it "is overwhelmingly characterized by mutuality of rights and remedy."

We hesitate to conclude that an adhesion contract can never been found between commercial parties, as Freese suggests. *See, e.g., Ross Prods. Div. Abbott Labs. v. State*, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *4 (Tenn. Ct. App. Dec. 5, 2007)

*perm. app. denied* (Tenn. Apr. 28, 2008) (finding it unnecessary to determine whether "sophisticated business persons" should be considered "consumers of goods and services" for purposes of inclusion within the "adhesion contract" definition); ***Vickery Transp., Inc. v. HEPACO, Inc.***, No. W2003-01512-COA-R3-CV, 2004 WL 2280421 (Tenn. Ct. App. Oct. 4, 2004) *perm. app. denied* (Tenn. Mar. 21, 2005) (determining that an agreement between commercial parties was not a contract of adhesion because there was insufficient evidence that the party challenging the agreement had no alternative to its execution). However, we find it unnecessary to decide whether Mr. Skelton is a "consumer[] of goods and services" because, under the circumstances of this case, we find that the Subcontract Agreement–particularly its arbitration clause–cannot be considered an adhesion contract. While it is true that Mr. Skelton testified in his Affidavit that the contract, aside from the price of his work, was "presented to him on a 'take it or leave it' basis[,]" that testimony, alone, is insufficient to create an adhesion contract. ***See Wilson Pharmacy, Inc. v. General Computer Corp.***, No. E2000-00733-COA-R3-CV, 2000 WL 1421561, at *4 (Tenn. Ct. App. Sept. 21, 2000) (holding that affidavit testimony by plaintiff that he did not know of any other computer corporation which would provide a comparable service or that he was offered a standardized contract "on a take-it-or-leave-it basis" was insufficient to show a contract of adhesion). Importantly, there is nothing in the record to suggest that the parties lacked equal commercial sophistication, that Mr. Skelton is a "weaker" party, or that Freese possessed superior knowledge of the subject matter. ***See Desgro v. Pack***, No. E2012-00918-COA-R3-CV, 2013 WL 84899, at *3 (Tenn. Ct. App. Jan. 8, 2013) (citing *Buraczynski*, 919 S.W.2d at 320). Moreover, there is no evidence that Mr. Skelton questioned the terms of the Subcontract Agreement, aside from the price of the work, and although execution of the Subcontract Agreement, according to Mr. Skelton, was required to secure a subcontractor position, Mr. Skelton has made no argument as to why he could not have simply walked away from a contract which contained terms he considered unfavorable. ***See id*** at *2 (finding a contract was not one of adhesion where the plaintiff failed to prove that defendant would not have performed the service without execution of the contract, where the plaintiff did not question the terms of the agreement, and where the plaintiff could have sought the service from another provider if he did not agree to the terms of the agreement). *Compare Buraczynski*, 919 S.W.2d at 320 (concluding that the arbitration agreements between physicians and patients were contracts of adhesion, noting that although the patients could have refused to sign the arbitration agreements, such action would have terminated the physician-patient trust relationship and interrupted the course of treatment); *Raiteri ex rel Cox v. NHC Healthcare/Knoxville, Inc.*, 2003 WL 23094413, at * (Tenn. Ct. App. Dec. 30, 2003) (concluding that a nursing home admissions contract, which included an arbitration clause, was a contract of adhesion where it was offered on a take-it-or-leave it basis, the weaker party had no opportunity to bargain over its terms, and where refusing to sign the agreement was not a viable option due to "very trying circumstances" necessitating admission to the facility). In sum, we find Mr. Skelton's conclusory statement that he was

offered the contract on a "'take it or leave it' basis" insufficient to show a contract of adhesion. ***See Wilson Pharmacy, Inc.***, 2000 WL 1421561, at *4. Therefore, we find it unnecessary to examine the arbitration clause to determine its reasonableness. We reverse the decision of the chancery court and we remand for entry of an order compelling arbitration. All remaining issues are deemed pretermitted.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court and we remand for entry of an order compelling arbitration. All remaining issues are deemed pretermitted. Costs of this appeal are taxed to Appellee, Jonathan Burke Skelton, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.