Curtis G. TAYLOR and wife Rose Taylor, Plaintiffs-Appellees,

v.

WHITE STORES, INC., Defendant-Appellant.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Nov. 14, 1985.

Application for Permission to Appeal Denied by Supreme Court, Jan. 27, 1986.

William P. Newkirk, D. Michael Swiney, Knoxville, for defendant-appellant.

Russell E. Simmons, Jr., Rockwood, for plaintiffs-appellees.

CRAWFORD, Judge.

This is a controversy between a landlord and tenant as to their respective rights and obligations under a written lease agreement. Plaintiffs-lessors, Curtis G. Taylor and wife, Rose Taylor (hereinafter referred to as Taylor or lessor), sued defendant-lessee, White Stores, Inc. (hereinafter referred to as White Stores or lessee), seeking a judgment that the lease agreement between the parties was terminated and for possession of the premises. White Stores filed an answer and counter-claim joining

issue on the complaint and seeking specific performance of the lease agreement requiring rebuilding or restoration of the building or, in the alternative, damages. The chancery court sitting without a jury entered a judgment adverse to White Stores resulting in this appeal.

The lease agreement in question executed in 1957 was by and between Taylor's predecessor in title as lessor and White Stores as lessee for a period of ten years expiring August 31, 1967. The lease agreement was properly extended from time to time and at the time of this controversy was to expire August 31, 1985. The last extension was dated May 7, 1975, before Taylor acquired ownership of the property and assignment of the lease on August 31, 1979. The parts of the lease agreement pertinent to the controversy before us are as follows:

\*    \*    \*    \*    \*    \*

4. The Lessors shall carry upon the improvements on the premises herein leased, at their sole expense, fire and extended coverage insurance to the extent of the insurable value of the improvements in an amount of not less than $50,000.00 with good and solvent companies issuing policies valid in the state of Tennessee, which amount of insurance may not be reduced except upon the written approval of the Lessee. Should the buildings on said premises be partially damaged by fire or other casualty so that a pro rata part of the same is made untenantable and cannot be used by the Lessee, the rent on such damaged portion shall be abated until the repairs are made, and the Lessors agree that such restoration or repairs shall be made at their sole expense as speedily as possible after such loss. Should the buildings be totally destroyed by fire or other casualty, Lessors shall proceed as speedily as possible after loss to rebuild the buildings at their sole expense and when the work of replacement or reconstruction is finished, Lessee will be given immediate possession for the remaining period of this lease, subject to all the terms and conditions thereof, and the total rent shall be abated until the premises are fully restored to the possession of Lessee in the same condition as before the fire. In the event the buildings are destroyed by fire, this lease shall be extended for an additional term equal to the time required for the rebuilding or restoration of the leased premises.

Should the premises be totally destroyed by fire or other casualty during the last six months of the period of this lease, then the Lessors shall be under no obligation to rebuild and restore said premises and in such event this lease shall terminate and become null and void as of the date of such fire.

During the period required for the restoration or reconstruction of the said buildings or any part thereof, the Lessors shall not be liable to the Lessee for any loss of use of the premises by the Lessee but the rent shall be abated as above provided until said buildings have been rebuilt or repaired and possession thereof restored to the Lessee.

5. If the Lessee shall fail to pay the rent as herein provided, ... or shall fail to fully keep and perform any of the other covenants, terms and conditions of this lease, and such default continue without being corrected for 20 days after written notice thereof from the Lessors, then said lease, at the option of the Lessors, shall immediately terminate, and the Lessors may take possession at once and shall be entitled to re-enter the premises, excluding the Lessee therefrom and to hold said land as of their former estate.

6. This lease may be assigned, transferred or conveyed or any part of the premises may be sublet by the Lessee provided the Lessee herein named, regardless of any sublease or assignment, shall remain liable for all rents and performances of all covenants and agreements herein contained unless relieved therein in writing by the Lessors.

7. Upon the termination of this lease, Lessee agrees to return the leased prem-

ises in as good a condition and state of repair as received, ordinary wear and tear, loss by fire, windstorm, cyclone and acts of God excepted.

8. The roof and exterior walls of the buildings; the floors except the floor covering such as asphalt, tile, etc., and all structural parts of the buildings shall be maintained by the Lessors. All other maintenance and repairs shall be borne by the Lessee.

White Stores ceased operating a grocery store in the building in the fall of 1982 and sublet the premises to Stewart Enterprises, Inc., by agreement dated January 6, 1983. The rent for the sublease was $2,100 per month and White Stores' rent to Taylor was $1,100.00. All the rental payments were made through May, 1983.

By letter dated May 19, 1983, Taylor advised White Stores of needed repairs to be made by White Stores allegedly pursuant to the lease agreement. The letter also set out other alleged breaches of the lease agreement by the lessee and stated that if the matters were not corrected within 20 days the lessor would consider the lease terminated. On May 22, 1983, the leased building was destroyed by fire and it is conceded that it was an arson fire started by unknown persons or person. A rear door of the building, which was locked by an inside metal bar, was found open by police and fire personnel when they arrived at the scene. After the fire, White Stores made demand that Taylor restore the building as provided by paragraph 4 of the lease but Taylor declined to do so and filed this suit.

The chancellor held that the lease should be terminated as of the date of the fire based on his findings:

First of all, the tenant was not keeping the building in the proper condition. That would be a breach of the lease. They were on notice for twenty days to remedy. Second, that the loss was caused by the negligence of the subtenant. Third, on general equitable grounds, this Court certainly would not wish to be placed in a situation of ordering the Plaintiffs to expend many, many thousands of dollars to rebuild a building which the tenant has moved out of, and upon which they would only have some hopeful expectations of renting at a profit. It is my opinion that the lease should be terminated.

The first issue presented for review is whether the trial court correctly interpreted the lease agreement.

White Stores asserts that the trial court's termination of the contract was erroneous in that he failed to give effect to the provisions of the contract and added new provisions thereto. White Stores also notes that the last extension of the lease period was to expire in August, 1985, and the fire occurred in May, 1983, clearly not within the last six months of the lease period.

■ In construing contracts the words expressing the parties' intentions should be given their usual, natural and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn. App.1983); *Moore v. Life & Casualty Insurance Co.*, 162 Tenn. 682, 40 S.W.2d 403 (1931).

■ Where there is no ambiguity, it is the duty of the court to apply the words used in their ordinary meaning, and neither party is to be favored in their construction. *Ballard v. North American Life & Casualty Co., supra; Brown v. Tennessee Auto. Ins. Co.*, 192 Tenn. 60, 237 S.W.2d 553 (1951).

■ In the absence of fraud or mistake a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust. *Ballard v. North American Life & Casualty Co., supra; E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 33 Tenn.App. 439, 232 S.W.2d 309 (1949).

■ Paragraph 4 of the lease is clear and unambiguous that the lessor obligated himself to rebuild the building in case of total destruction by fire. The proof is clear that lessor carried insurance as required by Paragraph 4 and collected $200,000 from his policy, but refused to rebuild pursuant to the terms of the lease agreement.

When read together, paragraphs 7 and 8 of the agreement between the parties are equally clear that there is no certain obligation on the part of the lessee to perform any maintenance and repairs during the term of the lease but is obligated only *to return* the leased premises "in as good a condition and state of repair as received, ordinary wear and tear, loss by fire, windstorm, cyclone and acts of God excepted." Furthermore, the lease is quite explicit that if we should consider the lessee's action as breach of a term or condition of the lease, the lessee is granted 20 days after written notice from the lessor within which to correct such violation of the lease provisions and it is uncontroverted that the fire in the case before us started within the 20 day period from the date of notice by lessor. Therefore, we find that the evidence does not show breach of any such provision of the lease on the part of White Stores.

■ The next issue presented for review is whether the evidence preponderates against the court's finding that the loss was caused by the negligence of White Stores' subtenant and, if not, whether such negligence would prevent the enforcement of the lease agreement requiring the lessor to rebuild.

Taylor insists that White Stores' subtenant was guilty of negligence which allowed an arsonist entry to the building in order to accomplish his purpose of burning it down. The trial court noted that entry to the building could be gained either by using a key to unlock the locked door and leaving by the door with the bar, or gaining access through the roof where an appliance had been removed, leaving a hole. He also noted that someone could have hidden inside the store until after closing time, or that the rear door could have been left unlocked. The trial court stated that there was no way to positively decide in what manner the arsonist gained entry to the building. From our review of the record we agree with the trial court that it would be speculation to attempt to determine from the proof how such entry was made. Accordingly, we do not feel that the record substantiates that an arsonist's entry was gained by virtue of the negligence of White Stores' subtenant and find that the evidence preponderates against such a finding by the court. In any event, by the clear language of the lease agreement, we find nothing that would excuse Taylor from complying with paragraph 4 if the fire had been caused by the negligence of the lessee or his subtenants. The clear import of the paragraph 4 language is that if the building was totally destroyed by fire from whatever cause, the lessor was obligated to rebuild it and put the lessee back in possession. We see no language to the contrary that would relieve the lessor from such obligation.

In view of our holdings on the two issues above, the remaining issues presented by appellant are without merit.

Therefore, the judgment of the trial court terminating the lease and dismissing White Stores' counter-complaint is reversed. The case is remanded for further proceedings to determine the appropriate relief due White Stores. Costs of the appeal are assessed against the appellees.

NEARN, P.J., and TOMLIN, J., concur.