# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### JULY 11, 2000 Session

## TERRY C. INSCOE, ET AL. V. KATHLEEN KEMPER, ET AL.

**Direct Appeal from the Chancery Court for Sumner County**
**No. 98C-385; The Honorable Tom E. Gray, Chancellor**

---

**No. M1999-00741-COA-R3-CV - Filed November 6, 2000**

---

This appeal arises from a suit filed by Inscoe seeking the return of earnest money held in escrow for the purchase of Kemper's residence. When Inscoe decided not to purchase the residence, Kemper refused to return the earnest money. The trial court found in favor of Inscoe and ordered the return of the earnest money. In making its finding, the court stated that Inscoe's promise to buy was illusory and there was no meeting of the minds, thus the contract was void and unenforceable. Kemper appeals.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

Alan E. Highers, J., delivered the opinion of the court, in which, W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Arthur McClellan, Gallatin, TN, for Appellants

John D. Kitch, Nashville, TN, for Appellees

### OPINION

In November 1997, Inscoe offered to purchase Kemper's property in Hendersonville, Tennessee. The contract price was six hundred and fifty thousand dollars ($650,000). The proposed contract contained several handwritten conditions including one that made the purchase contingent on Inscoe's receipt of a job offer from Columbia/HCA at an acceptable level of compensation and job title. At some point during negotiations, Inscoe deposited five thousand dollars ($5,000) earnest money to be held in escrow pending the completed sale.

Kemper rejected the contract based on the conditions. Inscoe was informed by her real estate agent, Mr. Forkum, that the contingencies were unacceptable to Kemper. Inscoe made a second offer to Kemper at the same price. This offer contained only the following hand-written condition: the contract is contingent upon acceptance by buyer of a satisfactory home inspection report by December 15, 1997, at which time, buyer agrees to deposit $20,000 with Re/Max Choice Properties

as additional earnest money. According to Inscoe, Forkum discussed the new condition with Ms. Mitchell, Kemper's real estate agent. Forkum and Mitchell also discussed the job contingency from the first proposed contract, and Mitchell stated that it "would be totally unacceptable." On November 17, 1997, Kemper accepted Inscoe's second offer and signed the contract.

The Kemper property was inspected in early December 1997. The inspector drafted a report on December 4. The report "graded" each topic, with grades ranging from 0-100, with 100 being the best and anything rated 60 or lower needing correction, maintenance, or replacement. The grades given to the Kemper property included the following: earthwork (40); water damage (40); concrete masonry (60); wood surfaces/substitutes (60); exterior siding (40); roof overhang (40); wood-millwork/trim (40); caulking (40); vents (40); finish materials / paint / finishes / coatings / treatment (20). The report also listed several other problems. Despite the numerous problems listed in the report, the inspector classified the house as somewhere between good and average.

After reviewing the inspector's report, the Inscoes decided that the house was not satisfactory. On December 15, 1997, Inscoe's husband wrote to Forkum that because of items in the home inspection report, the Inscoes did not plan to go forward with the purchase. When Forkum contacted Mitchell with this information, he was told that it was unacceptable because the inspection report was satisfactory. Shortly thereafter, Kemper's attorney contacted the Inscoes and informed them that the contract was in full force and effect.

In January 1998, Inscoe learned that she would not receive the position with Colombia/HCA. She wrote to Kemper's attorney seeking release of the earnest money. The money was not returned. Thereafter, Inscoe initiated suit in the Sumner County Chancery Court on December 23, 1998. Inscoe sought return of the five thousand dollar ($5,000) earnest money as provided for under the contract. Kemper filed a counter-complaint seeking specific performance of the contract. Before the case went to trial, Kemper sold the property to another buyer and amended her complaint to seek money damages.

A non-jury trial on the complaint and counter-complaint was held on September 7, 1999. At trial, testimony by the Inscoes indicated they believed the contingency meant the home inspection report must be "satisfactory" to them as buyers. In addition, Mr. Inscoe testified that although he perceived the contingency as an escape clause, it was not used as such. Mrs. Inscoe testified that she and her husband were genuinely dissatisfied with the finding in the report and did not wish to proceed with the sale on that basis. Forkum, the Inscoes' agent, testified that the language in the contingency meant satisfactory to the Inscoes.

The Kempers' real estate agent, Mitchell, testified that the home inspection report clause was confusing. According to the agent, the clause meant a "satisfactory home inspection report" rather than "satisfactory to the buyers." This contradicted her deposition testimony during which she had stated that the language normally meant "satisfactory to the buyers." In addition, she testified that it was not intended as an escape clause if Inscoe did not receive a job offer with Colombia/HCA.

Mrs. Kemper's testimony indicated that she interpreted the clause as requiring a "satisfactory home inspection report."

By order entered September 17, 1999, the court dismissed both the complaint and counter-complaint, holding there was no enforceable contract because Inscoe's promise to buy was illusory. In addition, the court found there was no meeting of the minds between the parties based on the disputed meaning of the contingency in the contract. Kemper was ordered to return Inscoe's earnest money and the parties were ordered to equally divide the court costs. Kemper appeals.

**Analysis**

The standard of review for a non-jury case is de novo upon the record. Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the "preponderance of the evidence is otherwise." TENN. R. APP. P. Rule 13(d). For issues of law, the standard of review is de novo, with no presumption of correctness. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996). In the case at bar, the only issues involve the enforceability of the contract as well as the interpretation of certain provisions in the contract entered into by the parties. The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is de novo on the record with no presumption of the correctness of the trial court's conclusions of law. Union Planters Nat'l Bank v. American Home Assurance Co., 865 S.W.2d 907, 912 (Tenn. App.1993).

Upon consideration of the record and the parties' argument, we have determined the case may be resolved on one issue: the absence of a meeting of the minds of the parties based on the ambiguous language of the contingency. Accordingly, our discussion will be limited to this issue.

Satisfactory Home Inspection Report

On appeal, Inscoe argues that the obligation to purchase Kemper's home was conditioned on the receipt of a satisfactory home inspection report. Inscoe asserts that since she found the report unsatisfactory, the condition precedent was not met and her obligation to buy was not triggered. Kemper argues that the report was satisfactory and therefore Inscoe's obligation to buy was triggered. Both of these arguments center on the meaning of a "satisfactory home inspection report." Based upon the following, we find that the contract term was ambiguous and prevented a meeting of the minds between the parties.

The primary rule in interpreting contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. Winfree v. Educators Credit Union, 900 S.W.2d 285, 289 (Tenn. Ct. App.1995); Rainey v. Stansell, 836 S.W.2d 117, 118 (Tenn. Ct. App.1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. Taylor v. White Stores, Inc., 707 S.W.2d 514, 516 (Tenn. Ct. App.1985). In the absence of fraud or mistake, a contract must be

interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. Heyer-Jordan & Assocs. v. Jordan, 801 S.W.2d 814, 821 (Tenn.App.1990).

An ambiguity in a contract is characterized as doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one. Hillis v. Powers, 875 S.W.2d 273, 276 (Tenn. App.1993). When a contract term is ambiguous there was no "meeting of the minds." A contract is unenforceable when there is no meeting of the minds or mutual assent by the parties. Jamestowne On Signal, Inc. v. First Federal Sav. & Loan Ass'n 807 S.W.2d 559, at 564 (Tenn. Ct. App. 1990) citing Johnson v. Central National Ins. Co. of Omaha, Neb., 356 S.W.2d 277, 281 (Tenn.1961) With the foregoing in mind, we now turn to the contract term at issue in this case.

The contingency placed in the real estate contract conditioned the sale on the buyer's acceptance of a "satisfactory home inspection report." At trial, both the parties and the parties' agents offered conflicting interpretations of the language. The Inscoes and their agent believed it meant a report that was subjectively satisfactory to themselves as the buyers. The Kempers and their agent believed it meant an objectively satisfactory report. It is apparent from these inconsistencies that the parties did not share the same understanding about the meaning of the contingency. Upon review, we hold that the language could be interpreted either way. Accordingly, there was no meeting of the minds between the parties and the contract cannot be enforced. Therefore, the trial court did not err on this issue.

**Conclusion**

For the foregoing reasons, the decision of the trial court is hereby affirmed. Costs of appeal are taxed to Appellant, Kathleen Kemper, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE