# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 5, 2001 Session

## GLORIA SNOW-KOLEDOYE v. HORACE MANN INSURANCE COMPANY

**A Direct Appeal from the Circuit Court for Davidson County**
**No. 93C230     The Honorable Walter Kurtz, Judge**

---

**No. M2000-02954-COA-R3-CV - Filed February 14, 2002**

---

This case involves a settlement of an insurance claim under the comprehensive coverage of an automobile insurance policy. Wife, named insured in the policy, sued the insurance company for breach of contract in delivering to husband a settlement check made jointly payable to wife and her husband, after husband apparently negotiated the check. Wife amended her complaint to name her ex-husband as an additional defendant, and he filed an answer to the complaint. In a nonjury trial, the trial court entered judgment for plaintiff-wife against the insurance company. Insurance company appealed. We vacate.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Joseph M. Huffaker, Nashville, for Appellant, Horace Mann Insurance Company

W. H. (Steve) Stephenson, II, Nashville, For Appellee, Gloria Snow-Koledoye

## OPINION

In March of 1993, plaintiff, Gloria Snow-Koledoye, purchased a Jaguar automobile and insured the vehicle with defendant, Horace Mann Insurance Company d/b/a Teachers Insurance Company. The policy provides in pertinent part:

### Defined words

*We* define some words used in the policy. This makes it easier to read and understand. Defined words are printed in bold face italics.

As used in the policy:

"*You*" and "*your*" mean the named insured shown on the declarations page and the named insured's *spouse* if a resident of the same household.

"*We*," "*us*," and "*our*," mean the company providing the insurance.

*       *       *

*"Spouse"* means *your* husband or wife while living with *you*.

*       *       *

**Reporting a claim -Your duties**

**Notice to *us* of an accident or *loss***

*You* must give *us* or one of *our* agents written notice of the accident or *loss* as soon as reasonably possible.  The notice must give *us:*

1.  *your* name; and

2.  the names and addresses of all *persons* involved; and

3.  the hour, date, place, and facts of the accident or *loss*; and

4.  the names and addresses of witnesses.

*       *       *

**Section V - Physical damage coverages**

**Comprehensive - Coverage D**

*       *       *

*We* will pay for *loss* to *your car* except *loss* by collision but only for the amount of each such *loss* in excess of the deductible amount, if any.

Breakage of glass, or *loss* caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, or riot or civil commotion is

payable under this coverage. *Loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

*　　　*　　　*

**Settlement of *loss*–Comprehensive and Collision coverage**

*We* have the right to settle a **loss** with **you** or the owner of the property in one of the following ways:

1.　　pay up to the ***actual cash value***;
2.　　repair or replace the property or part with like kind and quality less any depreciation;
3.　　return the stolen property and pay for any damage due to the theft; or
4.　　take the property at an agreed value, but it cannot be abandoned to ***us***.

In December of 1993, the plaintiff married Mr. Tommy Koledoye, and they resided at 4052 Ames Drive in Nashville, Tennessee. In 1995, the plaintiff and Mr. Koledoye began experiencing marital problems and Mr. Koledoye decided to go to South Carolina to look for work. Mr. Koledoye returned to Nashville, and he and the plaintiff agreed to "try to work things out" in South Carolina. The plaintiff and Mr. Koledoye traveled to South Carolina in the Jaguar automobile and the plaintiff lived there with her husband for approximately three (3) months. The plaintiff then flew back to Nashville, Tennessee, leaving the Jaguar automobile in South Carolina with Mr. Koledoye. The plaintiff provided Mr. Koledoye with a copy of the original certificate of title to the Jaguar automobile in order for him to obtain South Carolina tags.

On July 31, 1996, Mr. Koledoye reported to the defendant that the Jaguar automobile had been stolen in Columbia, South Carolina. Mr. Koledoye also informed the plaintiff that the vehicle had been stolen. Although the plaintiff testified on direct examination that she reported the theft of the Jaguar automobile to the defendant, she was cross-examined about her pre-trial deposition where she testified:

> Question, "And you didn't have any problem with him [Mr. Koledoye] notifying your insurance company; correct?"
>
> Answer, "I didn't have a problem with it. I didn't have a problem with it one way or another – another with it. He [Mr. Koledoye] said he had already done it. It had been done."

-3-

Question, "Did you, yourself – did you ever, yourself, report a loss to your insurance company?"

Answer, "No, I did not, no."

She testified at trial that at the time of the deposition, she had forgotten that she reported the claim. Mr. Henry Johnson, a representative of the defendant, also testified at trial that Mr. Koledoye reported the loss, not the plaintiff; and that the first time a representative of defendant ever talked with the plaintiff about the theft of the Jaguar automobile was on September 13, 1996.

After Mr. Koledoye reported the vehicle stolen, the defendant sent a letter dated July 31, 1996 to "Ms. Thomas S. Koledoye" of 3630 Ranch Road, Columbia, South Carolina which provides:

On 07/31/96 you reported the theft of vehicle. In order for us to properly evaluate your claim we must have the enclosed Statement Affidavit fully completed and signed.

Please return the affidavit to us in the enclosed business reply envelope.

When we receive your affidavit we will contact you as quickly as possible.

The defendant also took a recorded theft statement from Mr. Koledoye, via telephone, on July 31, 1996. The transcript of the recorded statement taken from Mr. Koledoye provides that Mr. Koledoye is married to "Gloria" Snow–Koledoye and that "[his] permanent home address is . . . 4052 Ames Drive, Nashville, Tennessee 37218." Mr. Koledoye also provided in his statement that he is employed with the African-American Culture Center in Columbia, South Carolina and that his Columbia address is 3630 Ranch Road, Unit 5-8. Furthermore, the defendant generated an "Auto Claim Data Sheet" which provides that "[i]nsd's husband lives and works in Columbia SC during the week. He drives back to Nashville on weekends. The car was stolen from the residence he has in South Carolina."

After the Jaguar automobile was recovered and inspected by the defendant, the defendant sent a letter dated August 13, 1996 to the plaintiff at her Nashville, Tennessee address. The same letter was also addressed and sent to Mr. Koledoye in Columbia, South Carolina and states:

I am writing to let you know we have inspected your 85 Jag XJ6 and have determined it is a total loss.

We arrived at the cash settlement based on the following information:

Actual cash value                    $6,075.00

-4-

|                                  |            |
|----------------------------------|------------|
| Less prior damage                | $0.00      |
| Less salvage value               | $0.00      |
| Less deductible                  | $250.00    |
| Less depreciation                | $0.00      |
| Less betterment                  | $0.00      |
| Plus tax, license, transfer fees | $300.00    |
|                                  |            |
| Total offer                      | $6,125.00  |

If you have a clear title to this vehicle, please sign the back of it in the Seller's Signature area. Indicate the claim number listed above on the front and return it to me. If you do not have the title, please call the lienholder for the outstanding loan balance and notify me at the address below of this amount.

On August 15, 1996, Mr. Koledoye presented to the defendant's Columbia, South Carolina office a certificate of title to the Jaguar automobile dated October 19, 1995, and containing what appears to be Gloria Snow's signature. The defendant in turn provided to Mr. Koledoye the settlement check[1] in the amount of $6,125.00 dated August 15, 1996, and made payable to "Gloria Snow–Koledoye & Thomas Koledoye." On August 19, 1996, the endorsed settlement check was cashed and processed through The National Bank of South Carolina.

Prior to the theft of the vehicle, the plaintiff had obtained a divorce attorney and, upon the advice of that attorney, procured a replacement certificate of title on the Jaguar automobile which is dated August 29, 1996. The plaintiff further testified that she offered Mr. Koledoye the Jaguar automobile in an effort to have Mr. Koledoye agree to an uncontested divorce. However, the plaintiff admitted in her testimony that at no time did she ever contact the defendant and inform them that she and Mr. Koledoye were estranged.

On September 13, 1996, the plaintiff contacted Mr. Henry Johnson, representative of the defendant, and stated to him that she had not received the settlement proceeds on the Jaguar automobile as outlined in defendant's August 13, 1996 letter. Mr. Johnson then informed her that the settlement checks had been delivered to Mr. Koledoye and had been made payable to both the plaintiff and Mr. Koledoye. According to Mr. Johnson, the plaintiff never contacted them regarding the stolen Jaguar prior to September 13, 1996.

At this time, the defendant provided forgery affidavits which it processed through its home office. However, the original bank where the settlement checks were cashed refused to honor the

---

[1] It should be noted that the defendant delivered a total of three (3) checks to Mr. Koledoye concerning the theft of the Jaguar automobile. These checks were made payable to both the plaintiff and Mr. Koledoye. However, only the settlement check in the amount of $6,125.00 is at issue before this Court.

forgery affidavits because the bank understood that the checks were being disputed with regard to domestic matters.

The plaintiff then filed a civil warrant against the defendant in the Metropolitan General Sessions Court of Davidson County, Tennessee, which was issued on July 31, 1997. The civil warrant alleged that the defendant had breached the insurance contract and acted in bad faith. On January 22, 1998, the parties entered an "Agreed Order to Transfer"[2] transferring the case to the Circuit Court of Davidson County, Tennessee. The defendant then filed an answer denying all of the allegations set forth by the plaintiff in her General Sessions civil warrant. The defendant also filed a motion to dismiss on the grounds that plaintiff "lacks capacity to bring her cause of action against the Defendant and/or that she fails to state a claim for which relief can be granted." The trial court granted this motion stating that "[i]t is the opinion of the Court that Plaintiff's failure to assert a claim in the Divorce proceeding over the insurance proceeds received by her then husband collaterally and/or equitably estopps (sic) the Plaintiff from bringing an action against the Defendant for those proceeds." After the plaintiff moved the trial court to reconsider, the trial court set aside its previous order and ordered the plaintiff to amend her complaint to include her former husband, Tommy Koledoye, as a defendant. Plaintiff then filed an amended complaint on January 15, 1999, adding Tommy Koledoye as a defendant, and he filed an answer to the amended complaint.

On September 3, 1999, the defendant, Horace Mann Insurance Company, moved for summary judgment and by order filed November 30, 1999, the trial court denied defendant's motion. A bench trial was held on August 16, 2000, and the trial court took the matter under advisement. In the trial court's memorandum and order filed on August 21, 2000, the judge dismissed the plaintiff's action for bad faith, but found in plaintiff's favor on the breach of contract issue and awarded damages to the plaintiff against the insurance company[3] in the amount of $6,125.00. On September 19, 2000, defendant filed a motion to alter/amend the judgment. The trial court denied this motion by order filed on October 25, 2000. On November 22, 2000, defendant filed its notice of appeal.

The defendant presents the following three (3) issues for review as stated in the its brief:

> I. Whether the preponderance of the evidence at trial established that an apparent agency existed between the plaintiff and Tommy Koledoye in their dealings with Horace Mann;
>
> II. Whether the evidence presented at the trial established that Horace Mann breached the terms of the insurance policy with the plaintiff;

---

[2] Although this Court is not familiar with the procedure to transfer a case from General Sessions Court to Circuit Court without a final judgment being entered, pursuant to Tenn. Code Ann. § 27-5-108 (2000), we will consider this as an appeal to the Circuit Court by the defendant, because of its filing of the cost bond.

[3] The judgment was made final pursuant to Tenn. R. Civ. P. 54.02.

III. Whether the plaintiff lacks standing and/or should be estopped from bringing her action due to her failure to raise a claim for the settlement proceeds in the divorce action against her ex-husband.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Furthermore, "[i]nsurance contracts are subject to much the same rules of enforcement and construction which apply to contracts generally." *Gray v. Estate of Gray*, 993 S.W.2d 59, 64 (Tenn. Ct. App. 1998)(quoting *Draper v. Great Am. Ins. Co.*, 458 S.W.2d 428, 432 (Tenn. 1970)). The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Id*. (citing *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992)). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. *Id*.(citing *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985)). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *Id*. (citing *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990)). In construing insurance contracts, this Court is obligated to attempt to determine the intent of the contracting parties, and because the policy was drafted by the insurance company, we must resolve any ambiguity and doubt in favor of the insured. *NSA DBA Benefit Plan, Inc. v. Connecticut General Life Ins. Co.*, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997)(citing *Spears v. Commercial Ins. Co.*, 866 S.W.2d 544, 550 (Tenn. Ct. App. 1993)).

We will first address issue two (II). The defendant argues in its brief that the plaintiff failed to carry her burden of proof at trial that there was any breach of the terms of the insurance policy. We agree. The insurance policy provides that the defendant has the right to settle a loss with "you or the owner of the property" by paying "up to the actual cash value." We do not find the insurance policy vague or ambiguous. The insurance policy provides definitions for certain key terms within the policy. The insurance policy defines the word "you" as being "the named insured shown on the declarations page and the named insured's spouse if a resident of the same household."

The undisputed facts are that the plaintiff's husband at this time, Mr. Tommy Koledoye, was listed on the insurance policy as a driver. The plaintiff provided Mr. Koledoye with possession of the Jaguar automobile as well as the certificate of title to the vehicle in order for Mr. Koledoye to obtain South Carolina tags. On July 31, 1996, the Jaguar automobile was stolen and Mr. Koledoye reported the theft to both the defendant and the plaintiff. The plaintiff testified in her deposition that she did not report the theft of the vehicle to the defendant, but then later changed her testimony at trial stating that she had forgotten that she had contacted the defendant to report the claim herself. However, the representative for the defendant disagreed and testified that the first time the defendant ever talked with the plaintiff about the claim was on September 13, 1996, one month after the defendant sent the settlement letter mentioned above.

-7-

The trial court specifically found that plaintiff did not report the claim to defendant. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). The evidence does not preponderate against this finding by the trial court.

The information provided to the defendant regarding Mr. Koledoye's residence is that Mr. Koledoye worked in South Carolina and that he drove back to Nashville, Tennessee on the weekends. The information Mr. Koledoye gave to the defendant, via the July 31, 1996 recorded telephone statement, provides his permanent home address as 4052 Ames Drive, Nashville, Tennessee 37218, the same address as the plaintiff. Also, the plaintiff testified that she never told the defendant that she and Mr. Koledoye were estranged.

Conversely, the plaintiff argues in her brief that "if settlement checks in general do not have to be delivered to the proper person, then all the insurance company would have to do is issue the draft with the insured as the named as a payee (sic), and simply hand it to anyone who happens to be present or in the vicinity. Surely, their responsibility of delivery encompasses a greater degree of competence than what is posed by Horace Mann." This argument is without merit. The policy does not specifically describe the delivery method for settlement proceeds. In this case, defendant was presented with a loss report from an insured driver which asserted that the driver is the husband of and resided with the named insured. In addition, the driver had possession of the vehicle at the time of the loss and had the certificate of title to the vehicle. The defendant was justified under this set of facts to make the settlement check jointly payable in order to protect itself in extinguishing claims by all persons interested.

Although we have found no Tennessee case dealing with the precise point presented by the issue on appeal, this Court recently dealt with a case involving payment by a life insurance company to someone other than the named beneficiary on a policy. In *Atkins v. Security Conn. Life Ins. Co.*, No. 02A01-9710-CV-00257, 1998 WL 900057 (Tenn. Ct. App. Dec. 28, 1998), the insured father of the plaintiff-beneficiary in a life insurance policy died, and the insurer received two claim documents. The first claim document was a notice of a social security number dated December 20, 1991 purportedly executed by the beneficiary. The second was the claimant's affidavit purportedly executed by the named beneficiary and notarized. There was nothing unusual about the documents. Thereafter, the claim was approved, and two checks were issued payable to Debra Atkins. At the time of his father's death, Ernest Atkins, the named beneficiary, was incarcerated and after his release in 1994, his application for food stamps was rejected because the records indicated that he had received the insurance proceeds in 1992. The food stamp office gave Atkins the name of the insurance company and the policy number, and he contacted the company asserting that he had not received the insurance policy proceeds. The company refused to pay the proceeds to him, and he

filed a suit against the company. The trial court granted summary judgment for the company. This Court, on appeal, affirmed the trial court, finding from the record that the insurance company paid proceeds without evidence of impropriety in the claim documents that would have placed the insurer on notice. The Court held that an insurer is discharged from subsequent liability when it makes a good faith payment to a purported beneficiary without notice of any competing claims. We believe this principle is applicable to the instant case. We, therefore, disagree with the trial court's finding that such payment constituted a breach of the insurance contract.

We should also note that had the affirmative defense of estoppel been pleaded by the defendant, the case could have been disposed of on that basis. In *Jackson v. Waller*, 230 S.W.2d 1013 (Tenn. 1950), our Supreme Court stated:

> Ordinarily the mere intrusting another with the possession of an automobile will not preclude the true owner from asserting his right to the automobile but when the owner couples possession with indicia of title then the true owner is estopped to assert a claim as against a purchaser for value from the one to whom possession plus indicia of title has been given by the true owner.

230 S.W.2d 1013 (Tenn. 1950)(citations omitted).

However, it is established that estoppel as an affirmative defense must be raised in the pleading. Tenn.R.Civ.P. 8.03; *see Billbry v. Smithers*, 937 S.W.2d 803 (Tenn. 1996).

Although our decision concerning Issue No. 2 disposes of the case, we will briefly address Issue No. 1. It is established in the proof that the plaintiff was well aware that Mr. Koledoye had filed the notice of loss and was dealing with the insurance company in the settlement of the case. The plaintiff was fully aware that Mr. Koledoye had been clothed with possession of the vehicle together with the title to the vehicle and yet never at any time advised the defendant that Mr. Koledoye was without authority to proceed with the handling of the settlement. In *White v. Methodist Hospital South*, 844 S.W.2d 642 (Tenn. Ct. App. 1992), this Court said:

> Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency. *Kelly v. Cliff Pettit Motors*, 191 Tenn. 390, 234 S.W.2d 822 (1950). Generally, to prove apparent agency one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment. *Oppenheimer v. Wooline*, 4 Tenn.Civ.App. 134 (1834). See also

*Southern Railway Co. v. Pickle*, 138 Tenn. 238, 197 S.W. 675
(1917) and Am.Jur.2d Agency, §§ 19 and 80 (1986).

*Id*. at 646. We find that the plaintiff acquiesced in Mr. Koledoye's exercise of authority by failing to object, in any manner, to Mr. Koledoye's handling of the insurance claim. As pointed out earlier, the plaintiff testified that she never told the defendant that she and her husband were estranged. Next, the defendant had knowledge of the facts and a good faith belief that Mr. Koledoye possessed such authority. The testimony from the record reveals that Mr. Koledoye represented to the defendant that his address was the same address as the plaintiff and that he worked in South Carolina and drove back to Nashville, Tennessee on the weekends. There is nothing in the record suggesting that the defendant had any information which would lead them to doubt the veracity of Mr. Koledoye's statement. Finally, the defendant relied on Mr. Koledoye's apparent authority to its detriment and therefore, we find that an apparent agency existed between the plaintiff and Mr. Koledoye and that the defendant acted reasonably under the circumstances.

In view of our decision, the defendant's third (III) issue is pretermitted. The judgment of the trial court is vacated, and the case is remanded to the trial court for such further proceedings as are necessary. Costs of appeal are assessed to the plaintiff, Gloria Snow-Koledoye.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.