IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 13, 2007 Session

# CLEAR CHANNEL OUTDOOR, INC. v. A QUALITY, INC, D/B/A MR. PRIDE, ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-1755     The Honorable D. J. Alissandratos, Chancellor**

**No. W2006-00946-COA-R3-CV - Filed April 9, 2007**

This case involves the interpretation of a lease agreement as it pertains to ownership of an advertising sign structure. The trial court found that Defendant/Appellee, the Lessor under the lease, is the owner of the sign structure pursuant to the terms of the lease. Plaintiff/Appellant contends that the plain language of the lease indicates that it is the owner of the disputed sign. We affirm and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Robert L. J. Spence, Jr. and Carrie C. Thomas of Memphis, Tennessee for Appellant, Clear Channel Outdoor, Inc.

Robert E. Craddock, Jr. and Kacey L. Faughnan of Memphis, Tennessee for Appellees, A Quality Inc., d/b/a Mr. Pride and A Quality, PMM, Inc.

## OPINION

Clear Channel Outdoor, Inc. ("Clear Channel," or "Appellant") is a Delaware corporation engaged in the outdoor advertising business. A Quality, Inc. d/b/a Mr. Pride ("Mr. Pride," or "Appellee") is a Tennessee corporation, which owns and operates several car washes throughout Shelby County. One of Mr. Pride's locations is at 4957 Poplar Avenue, Memphis, Tennessee. The sign structure at issue in this case (the "Poplar Sign") is located at this address.

On or about February 16, 1993, the parties entered into a "Lease Agreement" (the "Lease") for use of the Poplar Sign. In the Lease, Naegele Outdoor Advertising Company, Clear Channel's

predecessor in interest, is listed as the Lessee, and Mr. Pride is listed as the Lessor.[1] The Lease reads, in pertinent part, as follows:

> 1. Lessor does hereby lease and demise to the Lessee, the sign boards on the Premises described in Exhibit A attached hereto and made part hereof.[2]
>
>     \*                               \*                              \*
>
> 4. This Lease Agreement may be terminated by Lessor with respect to one or more locations on fifteen (15) days prior written notice by registered mail to the office of the Lessee in the event of development of locations requiring removal or alteration of the sign structure which Lessee has leased on any location set out in Exhibit A to this Lease. In such event Lessee shall remove the sign structure from the Premises indicated by Lessor within 30 days from the receipt of the notice from Lessor....
>
>     \*                               \*                              \*
>
> 6. Lessee shall have the right and obligation to maintain the advertising sign structures and equipment on the demised Premises set out in Exhibit A and shall further have the right to post, paint, illuminate and maintain advertisements on such structure.
>
> 7. The equipment and materials placed upon the leased sign structure and Premises (as set out in Exhibit A) by Lessee shall remain the personal property of and shall be removed by the Lessee within thirty (30) days after the expiration of the term hereof or any extension hereof.
>
> 8. Lessor shall have the right and option to purchase the materials and equipment placed upon the sign structure by Lessee as described

---

[1] To avoid confusion, the names Naegele Outdoor Advertising Company and Clear Channel may be used interchangeably in this Opinion. We acknowledge that Naegele Outdoor entered into the Lease; however, any benefit thereunder inures to Clear Channel and any obligation contained therein is binding upon Clear Channel. Consequently, the entities will be considered one and the same for purposes of this appeal.

[2] Exhibit A to the Lease reads, in relevant part, as follows:

> A. The area currently occupied by existing sign structure on the property known as Mr. Pride Car Wash, 4954 Poplar Avenue, Memphis, Tennessee, Naegele's having the right of reasonable ingress and egress.

in Paragraph 7 hereinabove at its depreciated value at the expiration of this Lease Agreement or any extension hereof or at the time of cancellation of this Lease Agreement, whichever shall first occur, which in no event shall exceed $1,000. In the event that this Lease Agreement is cancelled or terminated and Lessor does not wish to purchase the materials and equipment placed upon the sign structure, Lessee agrees to remove the materials and equipment and restore each of the Premises to its original state at the time of Lessee's original acquisition of leasehold at no cost to Lessor no later than thirty (30) days after termination or expiration of the Lease Agreement as such termination or expiration may relate to any or all locations.

9. The Lessee shall not have the right at any time during the term of this Lease Agreement to modify the advertising sign structure on the Premises or the dimensions thereof without the prior written consent of Lessor.

*                             *                             *

11. Lessor represent[s] and warrants that it is the Lessee or Owner of all of the above described Premises and has the authority to enter into this Lease Agreement.

*                             *                             *

16. Lessee shall be responsible for any and all costs associated with relocation, maintenance and removal of the materials and equipment from the Premises described in Exhibit A to this Lease Agreement, including any permits or other governmental requirements in relation thereto.[3]

The term of the Lease was from September 15, 1993 through September 14, 2003. On September 12, 2003, Clear Channel filed a "Verified Complaint for Injunctive and Declaratory Relief" (the "Complaint") against Mr. Pride. In its Complaint, Clear Channel requests that Mr. Pride be enjoined from removing or modifying the Poplar Sign, and that the trial court declare the rights and obligations of the parties as to the ownership of the Poplar Sign pursuant to the terms of the Lease. On March 30, 2004, Mr. Pride filed its Answer to Clear Channel's Complaint as well as its own Counter-Complaint. In the Counter-Complaint, Mr. Pride asserts that it is the true owner of the

---

[3] We note that there were numerous leases by and between the parties and/or their predecessors in interest prior to the 1993 Lease. However, it is uncontested that the 1993 Lease is controlling in this case. The relevant portion of the Lease reads: "[T]his Lease Agreement supersedes all prior written, verbal, express, or implied agreements between Lessor and Lessee...."

Poplar Sign, and requests damages for lost advertising revenues allegedly incurred during Clear Channel's alleged wrongful detainer of the Poplar Sign.[4]

On August 27, 2004, Mr. Pride filed a Motion for Default Judgment based upon Clear Channel's alleged failure to answer the Counter-Complaint. Thereafter, on September 30, 2004, Clear Channel filed its Answer to the Counter-Complaint, in which Clear Channel again asserts ownership of the Poplar Sign.

The trial court bifurcated the issues of ownership of the Poplar Sign and the determination of damages. On March 9, 2006, the trial court held a hearing to determine ownership of the Poplar Sign. On March 10, 2006, the trial court entered an "Order Correcting Clerical Mistake," which Order added A Quality PMM, Inc., a wholly owned subsidiary of A-Quality, Inc., as an additional party and as the correct entity owning the Poplar Sign. The trial court entered an Order on March 29, 2006 finding that Mr. Pride is "vested with sole and exclusive ownership of the sign structure located at 4954 Poplar Avenue." Because the issue of damages and ownership had been bifurcated, the court made the March 29, 2006 final pursuant to Tenn. R. Civ. P. 54.02. Clear Channel appeals and raises one issue for review as stated in its brief:

> Whether the Court erred when ruling on Clear Channel Outdoor, Inc.'s Declaratory Judgment action that A Quality, Inc. and/or A Quality PMM, Inc., are vested with the sole and exclusive ownership of a billboard located at 4954 Poplar Avenue in Memphis, Tennessee.

Mr. Pride raises three separate issues for review as stated in its brief:

> 1. Whether Clear Channel Outdoor, Inc. may raise issues not presented at trial for the first time on appeal?
>
> 2. Whether the Court should disregard the arguments and assertions made by Clear Channel Outdoor, Inc. which are supported by facts and/or documents outside the appellate record?
>
> *                              *                              *
>
> 4. Whether the trial court erred by failing to admit the testimony of David Hogue for the purpose of aiding the court in determining the meaning to be given the 1993 Lease Agreement?

---

[4] On February 16, 2006, Mr. Pride moved the court for leave to amend its Answer based upon Mr. Pride's discovery of "certain developments in the interpretation of current City of Memphis zoning ordinances." By its amended answer, Mr. Pride sought to "retract its answer regarding the non-conformity of the sign structure...." Leave to amend was granted, and the amended answer was filed on March 6, 2006.

The interpretation of a written agreement is a matter of law and not of fact; therefore, our review is *de novo* upon the record with no presumption of correctness of the trial court's conclusions of law. *NSA DBA Benefit Plan v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791, 795 (Tenn.Ct.App.1997). In *Gray v. Estate of Charles Henry Gray*, 993 S.W.2d 59 (Tenn.Ct.App.1998), this Court said:

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn.App.1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn.App.1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn.App.1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn.App.1990).

*Id.* at 64.

If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat'l Bank*, 620 S.W.2d 526 (Tenn.Ct.App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d at 462 (citing *Oman Constr. Co. v. Tennessee Valley Authority*, 486 F.Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. *Cookeville P.C.*, 884 S.W.2d at 462 (citing *Edwards v. Travelers Indem. Co.*, 201 Tenn. 435, 300 S.W.2d 615, 617-18 (1957)). Courts cannot make contracts for parties but can only enforce the contract that the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830 (1950).

In the instant case, the parties stipulate that the 1993 Lease is controlling. Furthermore, the parties agreed to be bound by the four corners of that Lease with the exception that certain industry terms used therein may be defined by the relevant portions of Larry Quas's deposition.[5] Mr. Quas, the real estate manager for Clear Channel, testified, in relevant part, as follows:

> Q. Now, when you [Mr. Quas] use the words or the phrase "sign structure," tell me what you are referring to.

---

[5] While this case was pending before this Court, Mr. Pride filed a separate motion to strike the deposition of Larry Quas from the record. Because the parties stipulated to the inclusion of certain portions of Mr. Quas's testimony at the hearing, we have entered an Order denying that motion.

A. The billboard.

Q. The billboard itself, does that include the pole that is attached to the ground?

A. Yes.

Q. And is there something called the facing?

A. Yes.

Q. What part of the sign is that?

A. That is the part of the sign that carries the advertising message.

*                    *                    *

Q. Okay. I'm going to look at the last sentence, then, of that paragraph [of the Lease]. And what you are saying, "the structure, equipment, and materials placed upon said premises by the lessee shall always remain the personal property of and shall be removed by the lessee within a reasonable time after the expiration of the term hereof or any extensions thereof," I'm sorry.

*                    *                    *

A. Well, there are three things in that sentence. The structure, equipment, and materials.

Q. What would be the equipment?

A. Equipment might be ballasts, transformers, light fixtures.

Q. And what about materials?

A. It could be the advertising copy itself, ratchet systems to support it, things of that nature.

Q. And, obviously, the structure, you are saying, is the sign structure itself?

A. Is the skeleton of the structure, the steel framework?

We first note that Naegele Outdoor Advertising Company, Clear Channel's predecessor in interest, is named as Lessee in the Lease, as opposed to Lessor. This fairly obvious fact is not to be overlooked as it indicates that Clear Channel does not own, outright, the property being leased to them. Based solely upon the existence of the Lease, into which Clear Channel's predecessor entered as the Lessee, it is clear that Clear Channel does not own all of the structure and accouterment of the Poplar Sign. Had they ownership of the sign structure, the equipment, *and* the material, there would be no need for them to lease same. From the granting clause (i.e. Paragraph 1) of the Lease, we know that the property being leased is the "sign boards on the Premises described in Exhibit A...." In Paragraph eleven (11), Mr. Pride, as Lessor, "represent[s] and warrants that it is the...Owner of all of the...described Premises and has the authority to enter into [the] Lease...." Exhibit A to the Lease defines the "Premises" at issue as "[t]he area currently occupied by existing sign structure on the property known as Mr. Pride Car Wash, 4954 Poplar Avenue, Memphis, Tennessee."[6] As set out above, Mr. Quas defines "sign structure" as "the skeleton of the structure, the steel framework." Taking the Lease as a whole, it is clear that Mr. Pride is the owner of the "sign structure." Paragraph seven (7) of the Lease indicates that Clear Channel owns only the equipment and materials placed on the sign structure, to wit: "The equipment and materials placed upon the leased sign structure...remain the personal property of the Lessee." Clear Channel's ownership of the equipment and materials is, of course, subject to Paragraph eight (8) of the Lease, which grants the Lessor, Mr. Pride, the right to purchase the equipment and materials at the expiration of the Lease. That being said, there is nothing in the Lease to indicate that Clear Channel owns the actual sign structure. When taken as a whole, along with Exhibit A and the admitted portions of Mr. Quas's deposition, we can only conclude that Mr. Pride is the rightful owner of the Poplar Sign. The separate issues raised by Mr. Pride are, consequently, pretermitted.

For the foregoing reasons, we affirm the Order of the trial court. The case is remanded for such further proceedings as may be necessary consistent with this Opinion. Costs of this appeal are assessed against the Appellant, Clear Channel Outdoor, Inc., and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

---

[6] Clear Channel indicates that only the parenthetical language contained in Paragraph D of Exhibit A states that the sign structure located on Summer Avenue is "owned by Lessor." Clear Channel asserts that the absence of this language–"owned by Lessor"– in the other paragraphs, and in particular Paragraph A dealing with the Poplar Sign at issue here, provides a basis for finding that the Poplar Sign is not owned by Mr. Pride. This argument is tenuous at best. Paragraph D concerns only ownership of the Summer Avenue sign and, consequently, has no bearing on ownership of the Poplar Sign, which is the focus of this lawsuit.