# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 5, 2004 Session

## LISA WYATT ROWAN v. MICHAEL HOWARD ROWAN

**Appeal from the Circuit Court for Davidson County**
**No. 01D-1951     Don Ash, Judge by Interchange**

---

**No. M2003-01668-COA-R3-CV - Filed January 27, 2005**

---

In this appeal, Appellant Michael Rowan challenges the trial court's grant of a post-divorce contempt petition. Appellee Lisa Rowan challenges the trial court's denial of her attorney's fees in connection with the petition, and seeks frivolous appeal damages in this court. We hold that the language of the parties' marital dissolution agreement is plain and unambiguous, affirm the trial court's grant of the wife's petition, reverse the trial court's refusal to award attorney's fees, and hold the appeal frivolous.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellant, Michael Howard Rowan.

John J. Hollins, Sr., and James L. Weatherly, Jr., Nashville, Tennessee, for the appellee, Lisa Wyatt Rowan.

### MEMORANDUM OPINION[1]

Lisa and Michael Rowan were divorced by court decree entered November 2, 2001. This decree incorporated a Marital Dissolution Agreement signed by the parties on the 23rd of August, and 6th of September of 2001. Of particular import in that agreement are the following paragraphs:

---

[1]Tenn. R. Ct. App. 10 provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

3.    WAIVER:  The Wife shall proceed to trial and obtain the divorce on the grounds of irreconcilable differences and each party shall be restored to all of the rights and privileges as of an unmarried person.  The parties hereto, exclusive of the terms and provisions of this agreement, each waive all rights, title, and interest consummate and inchoate, in and into the property in the estate of the other by way of expectancy or reversion or otherwise, including marital, insurance, contractual, and all other rights by way of dower, homestead, exemption, alimony, or otherwise, in the present or in expectancy as to any and all property in the estate of the other, and each of the parties does hereby release and discharge the other from any and all control, claims, demands, actions, or causes of actions, except as to the obligations imposed by this instrument or by the Court's decree, this being intended as the full, final and complete settlement of the property, marital and otherwise of the parties hereto.

4.    PERSONAL PROPERTY: An equitable distribution of marital assets has been agreed upon between the parties. Therefore, the Husband shall be divested out of all right, title and interest which he may have in items of personal property belonging to and now in possession of the Wife and said right, title and interest shall be vested in said Wife solely.  Furthermore, the Wife shall be divested out of all right, title and interest which she may have in items of personal property belonging to and now in possession of the Husband and said right, title and interest shall be vested in said Husband solely.

Specifically, the Wife shall be entitled to the following assets: the 2000 Oldsmobile in her name and her possession; the Capri houseboat of which Husband shall convey all his interest to Wife; and, other assets currently in her name or possession . . ..

. . . .

16.    BREACH BY A PARTY:  Whenever one party is required by the terms of this Agreement to assume responsibility for paying certain debts and/or indemnify and hold the other party harmless for any liability there for, such obligation shall be deemed to be a support obligation under 11 U.S.C. 523(5) which is not dischargeable in bankruptcy as to the other party.

In the event a creditor of either party seeks to compel the other party to pay any debt for which that party is not responsible, either by contract or pursuant [t]o the terms of this Agreement, the party against whom such claim is made shall be entitled to recover from the other party the amount of any payment he/she makes, including interest, and any expenses, including but not limited to attorney's fees and court costs which are incurred in defending the creditor's claim.

17. VOLUNTARY ACCEPTANCE: The parties agree that they have read this instrument in its entirety; that it is a fair and equitable settlement of their property; and, that they have signed this instrument free and voluntarily and without duress nor coercion. the parties further agree that they have made adequate and sufficient provision by written agreement for an equitable distribution of the parties' assets, debts, and personal property.

18. ENTIRE CONTRACT: This Agreement contains the entire contract between the parties. There are no representations, warranties or promises other than that which is expressly set forth herein.

19. UNDERSTANDING OF THE PARTIES: This Agreement constitutes the entire understanding of the parties. There are no representations, warranties or promises other than that which is expressly set forth herein.

20. EFFECTIVENESS: This Agreement shall be governed by the laws of the State of Tennessee and becomes effective as to both parties upon signing.

. . . .

23. MODIFICATION OF WAIVER: No modification or waiver of the terms hereof shall be valid unless in writing and signed by both parties. No waiver or any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature, and this provision cannot be waived by oral agreement.

24. ENFORCEMENT PROVISION: In the event that any provision of this Agreement shall be held invalid by a court of competent jurisdiction, such invalid provision shall not affect the other provisions of this Agreement, said provisions being severable.

25. NON-COMPLIANCE: In the event that either party must petition the Court for enforcement of any of the provisions within this Agreement, such party whom is at fault shall be responsible for reasonable attorney's fees and court costs in the enforcement of same.

Prior to entry of the decree adopting the Marital Dissolution Agreement, but after the parties had executed said agreement, Wife executed the following notarized document:

I, LISA W. ROWAN, [DO] HEREBY ASSIGN TO MICHAEL HOWARD ROWAN THE FOLLOWING DESCRIBED HOUSEBOAT:

MAKE: CAPRI

MODEL:      HOUSEBOAT
YEAR:       1968

STATE OF TENNESSEE

COUNTY OF DAVIDSON

On this *13th* day of October, 2001, before me appeared Lisa W. Rowan to be known to be the person or person describe[d] herein, and who executed the foregoing instrument and to me known to be the person or persons described herein, and who executed the foregoing instrument and acknowledge that the same was voluntary executed for purposes stated therein.

SWORN to and subscribed before me on this the *13th* day of October, 2001.

My Commission expires: _____*March 26, 2005*_____

The parties continued to disagree concerning certain aspects of the court's judgment of November 2, 2001, and the terms of the marital dissolution agreement regarding child support and visitation. The rigorous disagreement between the parties included the ownership of the Capri houseboat. Regarding the October 13, 2001 document, Ms. Rowan testified as to her version of the events:

Q. Now, you have stated as an issue that you had a houseboat that pursuant to the final decree of divorce was to be awarded to you, is that correct?

A. That's correct.

Q. Did you at any time prior to, ma'am, the divorce being approved by the trial judge, sign that houseboat over to Mr. Rowan?

A. Mike presented a document to me to sign. And at the time his brother, who's been in and out of jail and killed a man, was on that boat and there was no way I was going to get that boat from him.

And it is a history of violence Mike did with me, and I signed it.

Q. But, Ms. Rowan, if you would listen to my question, I assure you it's not my intent to attempt to deceive you or trick you in any way --

A. I did sign it because I knew I wouldn't get it back.

Q. And you signed it and it was notarized, correct?

A. Yes, it was.

Q. In fact, you had it notarized and returned it to Mr. Rowan --

A. He was with me at the time.

Q. And where was it notarized?

-4-

A. At a bank in Bellevue.

Q. And were you at that time interested in him divesting an interest he had in some real estate that you and he had together?

A. No.

Q. What happened to the marital residence at the time of your divorce?

A. We were living in an apartment at the time – we separated. And about a week before – a few days before the final divorce, I did purchase a house.

Q. Okay. a couple of days before that?

A. (Witness moves head up and down.)

Q. Did he ever sign a quitclaim deed or anything divesting his interest in that?

A. It was something that the mortgage company or Realtor required that he sign. Yes.

Q. Did he do that when you requested that he do so?

A. Yes, he did.

Q. And was that about the same time that you gave him the bill of sale on the houseboat?

A. It was about three weeks before.

Q. Were there any problems with the houseboat along about the time that you transferred it to Mr. Rowan?

A. Not to my knowledge. My only knowledge was that his brother was living on the boat.

Q. And did you tell me in your deposition, Ms. Rowan, that the reason you transferred that houseboat to your former husband was that you were frightened of him, correct?

A. That is correct. And that is basically the whole reason I got the divorce and gave him everything, was because of him.

Q. Did you at any time prior to requesting that the Court approve that Marital Dissolution Agreement inform Miss Palermo or the Court that you had already transferred the houseboat to Mr. Rowan?

A. I did not.

Q. Do you have any particular reason why you did not inform the Court of that --

A. All I wanted was to get divorced and – get divorced and away from him. That's all I wanted.

And whether I got the houseboat or not, that wasn't – my interest was getting way [sic] from a man that beat me in front of my kids.

Mr. Rowan's version of the events varies starkly:

Q. Mr. Rowan, just tell us how it come [sic] to be that you got the houseboat. You heard that Miss Rowan said, the reason she signed it over. Why do you say she signed it over?

A. She didn't want to be burdened with the houseboat or the trouble with the houseboat and the engine didn't run. It was leaking and it was getting ready to become a big problem with that houseboat.

If it would have sunk and would have pulled the dock down, it's Fate Sanders Marina, we would have been responsible for the damage to the dock. She didn't want to have anything to do with the boat.

Q. Now did you beat her, intimidate her, force her by any means whatsoever to sign that bill of sale over to you?

A. No.

Q. Did you appear, sir, on the date that the final decree of divorce was granted incorporating the Marital Dissolution Agreement and your Parenting Plan?

A. I did not.

Q. Did around this time Ms. Rowan request that you quitclaim an interest, real or theorized in any real property?

A. Yes, she did.

Q. Tell His Honor about that discussion between you and Ms. Rowan.

A. We had a discussion. I was trying to study and, you know, gear up to take the bar. We – she wanted me to sign the house over to her.

Q. What house are you talking about?

A. The house at 3801 Dartmouth Lane.

Q. Is that a house y'all lived in together?

A. Yes, we did.

Q. During the marriage?

A. No.

Q. Was that subsequent to your marriage?

A. Subsequent.

Q. I'm trying to understand why she needed you to sign any interest in that house to her, if she didn't get it until after the marriage. I'm missing something.

A. Because the mortgage company, the people that were going to give the mortgage on the house didn't want me to have any claim to the house.

Q. Well did she buy the house before the divorce was granted?

A. Yes, she did.

Q. All right, sir. Did you sign that deed that she requested?

A.      I most certainly did.

On May 16, 2002, Lisa Rowan filed her petition for contempt, alleging as grounds for the petition Michael Rowan's failure to make certain child support payments and refusing to convey possession of the parties' Capri houseboat to her.[2]

Mr. Rowan responded to the petition raising as a defense the alleged conveyance of all interest in the houseboat pursuant to the notarized document of October 13, 2001, and counterclaimed, alleging as his grounds that Lisa Rowan had interfered with his visitation rights as set out in the parenting plan.  The trial court, having heard from both parties, rendered a judgment on the petition ordering Mr. Rowan to convey the houseboat and denying his counter petition.

## I.      MARITAL DISSOLUTION AGREEMENT AS CONTRACT

The well-settled law in this jurisdiction is that marital dissolution agreements are accorded the same interpretive dignity as any other contract entered into between willing parties.  *See Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001).  The rules of interpretation give cardinal importance to the plain and unambiguous terms of contracts when determining the intent of the parties.

> A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings.  *See Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993).  "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect.'"  *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. App. 1990) (quoting *Matthews v. Matthews*, 24 Tenn. App. 580, 593 148 S.W.2d 3, 11-12 (1940)).
> . . . .
> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles.  *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. App. 1992).  In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning.  *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. App. 1985).  In the absence of fraud or mistake, a contract must be interpreted and

---

[2] The most disappointing and disturbing factor of this appeal is its subject - - not the adequate provision of support for minor children, not the care, comfort and continued loving relationship with those children, but the ownership of a Capri houseboat, which, if the allegations of Appellant's Motion for Consideration of Post-Judgment Facts are accepted, is by all accounts well on its way to the bottom of the lake at which it is docked.  The bulk of the testimony heard in the trial court concerns the custody and support issues, but it is the leaky houseboat which is the only issue on appeal in this court.

enforced as written, even though it contains terms which may seem harsh or unjust. *Hewer-Jordan & Assoc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. App. 1990).

*Gray v. Estate of Gray*, 993 S.W.2d 59, 63-64 (Tenn. Ct. App. 1998).

In addition, once a property settlement agreement is adopted by the court as part of the divorce decree, the settlement is not subject to modification. *See Towner v. Towner*, 858 S.W.2d 888, 893 (Tenn. 1993). According to its plain unambiguous terms, the MDA became effective on the date the parties signed it, the latter of these dates being in September of 2001. In addition, the MDA provided that amendments to that contract were to be made only through a writing signed by both parties. Under the plain language of this MDA the notarized document of October 13 fails to properly amend the agreement. Regardless of the effect of the writing, Mr. Rowan did not appear at the hearing which resulted in the adoption of the MDA as part of the decree and in which the trial court approved the MDA as the statute requires in an irreconcilable differences divorce. Tenn. Code Ann. § 36-4-103(b). *See also Vaccarella v. Vaccarella*, 49 S.W.3d 307 (Tenn. Ct. App. 2001). He simply challenged the petition to enforce the decree, without having sought to modify the decree.

If indeed the Husband wanted to make any amendment to this Marital Dissolution Agreement, at the very least, Mr. Rowan should have appeared within the time prescribed by the rules to make the appropriate motion to alter or amend under Tenn. R. Civ. P. 59 or for relief under Tenn. R. Civ. P. 60.02. *See* Tenn. R. App. P. 60.02; *Vanatta v. Vanatta*, 701 S.W.2d 824, 827 (Tenn. Ct. App. 1985). No such motion was made, and no appeal from the final judgment was filed. The petition to enforce was properly granted in respect to the Capri houseboat.

## II.    FRIVOLOUS APPEAL AND ATTORNEY'S FEE

Despite the well-settled rules concerning the provisions and effect of the MDA, Mr. Rowan would argue, without citation, that the doctrine of ademption would apply to undermine a couple's plain expression of the intent to settle their marital estate, all the while preventing, through the use of the judicial process, the Wife's access to a marital asset or other remedial measures to preserve that asset.

This appeal is completely devoid of merit and raised solely for the purpose of delay. *See* Tenn. Code Ann. § 22-1-122. The cause is remanded for the award of damages in favor of Appellee in accordance with this statute. In addition to the plain language regarding modification of the agreement, the MDA contains in paragraphs 24 and 25 provisions for assessment attorney's fees to the parties seeking enforcement. The record shows that Mr. Rowan's actions required enforcement and triggered those provisions. In addition, those provisions as part of the MDA became a final judgment between the parties and was not appealed. *See Nance v. Pankey,* 880 S.W.3d 944, 946 (Tenn.Ct.App. 1993).

Since the attempts to enforce the marital dissolution agreement included an attempt to enforce the child support provisions, then the attorney's fee provision of Tennessee Code Annotated §36-5-103(c) applies to these facts as well. We find that attorney's fees and costs on appeal should

be assessed against Appellant with the determination of reasonable and necessary attorney's fees to be left to the trial court. The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings. Costs on appeal are assessed against Appellant.

 

_____

WILLIAM B. CAIN, JUDGE